1  Eugene P. Ramirez, Esq. (State Bar No. 134865)
     *epr@manningllp.com*
2  Angela M. Powell, Esq. (State Bar No. 191876)
     *amp@manningllp.com*
3  Michael R. Watts, Esq. (State Bar No. 312210)
     *mrw@manningllp.com*
4  **MANNING & KASS**
   **ELLROD, RAMIREZ, TRESTER LLP**
5  801 S. Figueroa St, 15th Floor
   Los Angeles, California 90017-3012
6  Telephone: (213) 624-6900
   Facsimile: (213) 624-6999
7
8  Attorneys for Defendants, COUNTY OF
   RIVERSIDE, RIVERSIDE COUNTY SHERIFF'S
   DEPARTMENT, CORPORAL LUIS IBARRA,
9  DEPUTY NIGEL HINSON, DEPUTY MATT
   BILTON, DEPUTY ANTHONY LEVESQUE,
10 DEPUTY LORENA MIRANDA, DEPUTY
   ANDREW PEARSON, DEPUTY JOSEPH
11 RODRIGUEZ

12            **UNITED STATES DISTRICT COURT**

13    **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

14

| | |
|---|---|
| 15  JARRELL RAYVON ALLEN, an individual, | Case No. 5:19-CV-00153-RGK-SHK [The Hon. R. Gary Klausner, Magistrate, Shashi H. Kewalramani] |
| 16 | |
| 17            Plaintiff, | **SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, SUMMARY ADJUDICATION** |
| 18       v. | |
| 19  COUNTY OF RIVERSIDE, a California municipal entity; | |
| 20  RIVERSIDE COUNTY SHERIFF'S DEPARTMENT, a California municipal entity; CORPORAL LUIS | |
| 21  IBARRA, an individual; DEPUTY NIGEL HINSON, an individual; | Date:    January 13, 2020 |
| 22  DEPUTY MATT BILTON, an individual; DEPUTY ANTHONY | Time:    9:00 a.m. Ctrm.:   850 |
| 23  LEVESQUE, an individual; DEPUTY SHERIFF LORENA MIRANDA, an | |
| 24  individual; DEPUTY ANDREW PEARSON, an individual; DEPUTY | |
| 25  JOSEPH RODRIGUEZ, an individual; and DOES 1-30, inclusive, | |
| 26 | |
| 27            Defendants. | |

28

MANNING & KASS
ELLROD, RAMIREZ, TRESTER LLP
Attorneys at Law

MANNING&KASS
ELLROD, RAMIREZ, TRESTER LLP
— Attorneys at Law —

1   Defendants COUNTY OF RIVERSIDE ("County"), RIVERSIDE COUNTY

2   SHERIFF'S DEPARTMENT ("RCSD"), CORPORAL LUIS IBARRA, DEPUTY

3   NIGEL HINSON, DEPUTY MATT BILTON, DEPUTY ANTHONY LEVESQUE,

4   DEPUTY LORENA MIRANDA, DEPUTY ANDREW PEARSON, and DEPUTY

5   JOSEPH RODRIGUEZ (collectively "Defendants") submit the following Separate

6   Statement of Material Uncontroverted Facts and Conclusions of Law on the

7   following issues:

8   1.   As to federal claim one under 42 U.S.C. § 1983 for excessive force

9   against the individual defendants, the use of force by the deputies were objectively

10   reasonable under the totality of the circumstances and was applied in a good faith

11   effort to maintain or restore discipline and order of a prisoner, not maliciously or

12   sadistically to cause harm. *Graham v. Connor*, 490 U.S. 386 (1989); *Hudson v.*

13   *McMillian*, 503 U.S. 1, 6-7 (1992); *Kingsley v. Hendrickson,* 576 U.S. ___, 135 S.

14   Ct. 2466, 2473 (2015).

15   Even assuming, arguendo, that plaintiff could show a constitutional violation,

16   the defendants are entitled to qualified immunity. *Saucier v. Katz*, 533 U.S. 194, 200

17   (2001); *White v. Pauly*, 137 S.Ct. 548, 552 (2017); *S.B. v. County of San Diego*,

18   2017 U.S. App. LEXIS 8452 at *15 (9th Cir. 2017).

19   Additionally, plaintiff's claim against defendants Miranda, Levesque, Bilton,

20   Pearson and Rodriguez fail because plaintiff failed to exhaust his administrative

21   remedies against the aforementioned individual defendants as required by 42 U.S.C.

22   § 1997e.

23   2.   The second and third federal *Monell* claims under 42 U.S.C. § 1983

24   against the County fail as no underlying constitutional violation can be shown. *City*

25   *of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *Martinez v. County of Los*

26   *Angeles*, 47 Cal.App.4th 334, 349-350 (1996). Assuming arguendo that one can be

27   shown, there is no additional evidence of a pattern, practice or custom. *Oklahoma v.*

28   *Tuttle*, 471 U.S. 808, 824 (1985).

3.   Plaintiff's redundant state law claims four, five, six and seven, for negligence, battery, intentional infliction of emotional distress, and violation of Cal. Code § 52.1 – Bane Act, lack merit for the same reasons as the federal claims. *Martinez v. County of Los Angeles,* 47 Cal.App.4th 334, 349-350 (1996). All individual defendants acted under law and within constitutional limits. The County is immune from the state law claims. Gov. Code § 815.2.

Further, as to plaintiff's Bane Act claim, there is no evidence of threats, intimidation or coercion by defendants.

4.   The prayer for punitive damages lack merit because there is no evidence that any of the defendants acted with malice, oppression, fraud, or reckless disregard towards plaintiff. Where there is no evidence that a § 1983 defendant has acted with evil intent, there is no legal right to punitive damages. *Ward v. City of San Jose*, 967 F.2d 280, 286 (9th Cir. 1991). There is no evidence that the individual defendants acted with evil intent.

The following uncontroverted facts apply to all federal and state claims.

| Defendants' Uncontroverted Facts As to All Federal and State Claims | Defendants' Supporting Evidence |
|---|---|
| **A. Allen's Refusal To Return To Cell**<br>1. On May 26, 2018, Plaintiff Jarrell Allen ("Allen") was in custody at Larry D. Smith Correctional Facility as a convicted offender, after a jury found him guilty of felony offenses on January 2, 2018. | Declaration of Michael Watts ("Watts Decl.") at ¶ 10, Exh. J; Declaration of Sr. Corporal Ibarra ("Ibarra Decl.") at ¶¶ 4-5. |
| 2. Plaintiff was housed in Dayroom D of Housing Unit 17, which is a state level housing unit for level four and five inmates, | Ibarra Decl. at ¶¶ 4-5. |

MANNING&KASS
ELLROD, RAMIREZ, TRESTER LLP
Attorneys at Law

| Defendants' Uncontroverted Facts As to All Federal and State Claims | Defendants' Supporting Evidence |
|---|---|
| which are inmates who have a prior criminal history and have served four to six cumulative years in State or County custody. | |
| 3. At about 12:40 p.m., the inmates in Housing Unit 17 finished eating their meals and were instructed to return to their cells. Allen refused to return to his cell and remained in the dayroom to clean. | Ibarra Decl. at ¶¶ 6, 8, 12; Declaration of Correctional Deputy Nigel Hinson ("Hinson Decl.") at ¶ 4. |
| 4. It is common practice in Housing Unit 17 that three inmates from each dayroom are allowed to remain in the dayroom to clean, but such practice is a privilege, which Allen was not allowed due to his involvement in a prior disturbance. | Ibarra Decl. at ¶ 7; Hinson Decl. at ¶ 5. |
| 5. Prior to May 26, 2018, Allen was involved in a prior incident, where he was the main instigator of a dayroom disturbance. During the prior incident, Allen encouraged the entire Housing Unit 17, which houses over 190 inmates, to refuse to return to their cells. | Ibarra Decl. at ¶ 9. |
| 6. Due to Allen's involvement in the prior | Ibarra Decl. at ¶¶ 9-10; Hinson |

**DEFENDANTS' STATEMENT OF UNCONTROVERTED FACTS**

MANNING&KASS
ELLROD, RAMIREZ, TRESTER LLP
Attorneys at Law

| Defendants' Uncontroverted Facts As to All Federal and State Claims | Defendants' Supporting Evidence |
|---|---|
| disturbance, Defendant Sr. Corporal Ibarra ("Ibarra") told Allen he could not remain in the dayroom to clean and that he would need to return to his cell. | Decl. at ¶ 8. |
| 7. Ibarra also ordered two other inmates to return to their cells. The other two inmates complied, while Allen approached the housing unit speaker and started using profanities, telling Ibarra he needed to give a better reason. | Ibarra Decl. at ¶¶ 11-12; Hinson Decl. at ¶ 7. |
| 8. To avoid a disturbance like the previous one, Ibarra had Allen step out of the dayroom so he could speak to Allen away from the view of the other inmates. Based on Ibarra's experience, inmates tend to accept constructive criticism, more so, if they do not have peer pressure from other inmates watching or listening. | Ibarra Decl. at ¶¶ 13-15; Hinson Decl. at ¶ 9. |
| **B. Allen's Physical Resistance To Efforts To Restrain Him**<br>9. As it is common practice to have two staff present while handling an inmate, Ibarra and | Ibarra Decl. at ¶ 16; Hinson Decl. at ¶ 10. |

| Defendants' Uncontroverted Facts As to All Federal and State Claims | Defendants' Supporting Evidence |
|---|---|
| defendant Correctional Deputy Hinson ("Hinson") stepped out of the control room and walked towards the sally port slider entrance to meet Allen. | |
| 10. Allen exited the dayroom and walked towards Ibarra and Hinson with his arms out to his sides. | Ibarra Decl. at ¶ 17; Hinson Decl. at ¶ 11. |
| 11. It is routine procedure that when inmates step out of the dayroom, the inmates place their hands behind their backs. It is construed as an act of open defiance when inmates step out of the dayroom with their arms out to their sides. | Ibarra Decl. at ¶ 17; Hinson Decl. at ¶11. |
| 12. For safety issues, Ibarra instructed Allen to place his hands behind his back. | Ibarra Decl. at ¶ 18; Hinson Decl. at ¶ 12. |
| 13. Allen did not comply and Ibarra again instructed Allen to place his hands behind his back. | Ibarra Decl. at ¶ 18; Hinson Decl. at ¶¶ 12-13. |
| 14. After Allen hesitantly placed his hands behind his back, Ibarra instructed Allen to | Ibarra Decl. at ¶ 18-19; Hinson Decl. at ¶ 13-14. |

| Defendants' Uncontroverted Facts As to All Federal and State Claims | Defendants' Supporting Evidence |
|---|---|
| walk towards the red line. The red line is a physical red line painted on the floor and an area designated for inmates to stand and where staff can talk to the inmates. It is routine procedure that when inmates step out of the dayroom and into the hallway, the inmates stand in the red line area to be searched. | |
| 15. Allen started walking, but stopped and asked where he was going. Ibarra, again, told Allen to keep walking to the red line. | Ibarra Decl. at ¶ 20; Hinson Decl. at ¶ 15; Watts Decl. at ¶ 5, Exh. E (Video Recording of Incident, May 26, 2018 (COR 00124 (erroneously marked COT 00124). |
| 16. Allen remained still and did not move. Hinson placed his hand on Allen's back to help guide Allen towards the wall and conduct a pat search for contraband. | Ibarra Decl. at ¶ 21; Hinson Decl. at ¶ 15; Watts Decl. at ¶ 5, Exh. E (Video Recording of Incident, May 26, 2018 (COR 00124 (erroneously marked COT 00124). |
| 17. Allen tensed his body and turned towards Hinson in a manner that caused Ibarra and Hinson to believe Allen was going to assault them. | Ibarra Decl. at ¶ 21; Hinson Decl. at ¶ 15, Exh. G-1; Watts Decl. at ¶ 5, Exh. E (Video Recording of Incident, May 26, 2018 (COR |

| Defendants' Uncontroverted Facts As to All Federal and State Claims | Defendants' Supporting Evidence |
|---|---|
| | 00124 (erroneously marked COT 00124). |
| 18. Ibarra ordered Allen to stop resisting and face the wall. | Ibarra Decl. at ¶ 22; Watts Decl. at ¶ 5, Exh. E (Video Recording of Incident, May 26, 2018 (COR 00124 (erroneously marked COT 00124). |
| **C. Deputies' Use Of Force To Stop The Threat Posed By Allen**<br>19. Allen refused by trying to pull away from Hinson. | Ibarra Decl. at ¶ 22; Hinson Decl. at ¶ 16; Watts Decl. at ¶ 5, Exh. E (Video Recording of Incident, May 26, 2018 (COR 00124 (erroneously marked COT 00124). |
| 20. To gain control of Allen's movements, Ibarra and Hinson attempted to push Allen against the wall. | Ibarra Decl. at ¶ 24, Ex. F-1; Hinson Decl. at ¶ 16, Exh. G-2; Watts Decl. at ¶ 5, Exh. E (Video Recording of Incident, May 26, 2018 (COR 00124 (erroneously marked COT 00124). |
| 21. Allen pushed his body back and away from the wall. | Ibarra Decl. at ¶ 25, Ex. F-2; Hinson Decl. at ¶17, Exh. G-3; Watts Decl. at ¶ 5, Exh. E (Video Recording of Incident, May 26, 2018 (COR 00124 (erroneously |

| Defendants' Uncontroverted Facts As to All Federal and State Claims | Defendants' Supporting Evidence |
|---|---|
|  | marked COT 00124). |
| 22. Allen pulled his arm from Ibarra's and Hinson's hold. | Ibarra Decl. at ¶ 26, Ex. F-3; Hinson Decl. at ¶ 18, Exh. G-4; Watts Decl. at ¶ 5, Exh. E (Video Recording of Incident, May 26, 2018 (COR 00124 (erroneously marked COT 00124). |
| 23. Ibarra and Hinson struggled to gain control of Allen as Allen moved away from the wall with his arms free from Ibarra's and Hinson's hold. | Ibarra Decl. at ¶¶ 26-29, Ex. F-3, F-4; Hinson Decl. at ¶¶ 17-18, Exhs. G-3, G-4; Watts Decl. at ¶ 5, Exh. E (Video Recording of Incident, May 26, 2018 (COR 00124 (erroneously marked COT 00124). |
| 24. Defendants Deputy Lorena Miranda ("Miranda"), Correctional Deputy Anthony Levesque ("Levesque") and Correctional Deputy Matt Bilton ("Bilton") were in the Housing Unit 16 hallway when they heard a noise from the Housing Unit 17 hallway. When they responded to the Housing Unit 17 hallway, Miranda, Levesque and Bilton | Ibarra Decl. at ¶ 30; Declaration of Anthony Levesque ("Levesque Decl.") at ¶¶ 3-5; Declaration of Correctional Deputy Matt Bilton ("Bilton Decl.") at ¶¶ 3-6; Declaration of Officer Lorena Miranda ("Miranda Decl.") at ¶¶ 3-4; Watts Decl. at ¶ 5, Exh. E |

MANNING&KASS
ELLROD, RAMIREZ, TRESTER LLP
Attorneys at Law

| Defendants' Uncontroverted Facts As to All Federal and State Claims | Defendants' Supporting Evidence |
|---|---|
| observed Allen with his hands on Ibarra while Hinson trying to pull Allen away from Ibarra. | (Video Recording of Incident, May 26, 2018 (COR 00124 (erroneously marked COT 00124). |
| 25. Miranda, Levesque and Bilton responded and assisted Ibarra and Hinson in pulling Allen to the ground. | Levesque Decl. at ¶¶ 5-6; Bilton Decl. at ¶¶ 7-10; Miranda Decl. at ¶¶ 5-6; Watts Decl. at ¶ 5, Exh. E (Video Recording of Incident, May 26, 2018 (COR 00124 (erroneously marked COT 00124). |
| 26. While on the ground, Allen was face down and had his arms tucked underneath his body. | Ibarra Decl. at ¶ 32; Hinson Decl. at ¶ 25; Levesque Decl. at ¶ 6; Bilton Decl. at ¶ 9; Watts Decl. at ¶ 5, Exh. E (Video Recording of Incident, May 26, 2018 (COR 00124 (erroneously marked COT 00124). |
| 27. Allen's arms under his body was a safety risk as he could have had a weapon. | Hinson Decl. at ¶ 25; Levesque Decl. at ¶ 6; Watts Decl. at ¶ 5, Exh. E (Video Recording of Incident, May 26, 2018 (COR 00124 (erroneously marked COT 00124). |

MANNING & KASS
ELLROD, RAMIREZ, TRESTER LLP
Attorneys at Law

| Defendants' Uncontroverted Facts As to All Federal and State Claims | Defendants' Supporting Evidence |
|---|---|
| 28. Allen continued to move his body and push his body off the ground in an attempt to stand up while the five deputies – Ibarra, Hinson, Miranda, Levesque and Bilton – tried to secure Allen in handcuffs. | Ibarra Decl. at ¶¶ 33-34; Hinson Decl. at ¶¶26-28; Levesque Decl. at ¶¶ 6-10; Bilton Decl. at ¶¶8-11; Miranda Decl. at ¶¶ 8-10; Watts Decl. at ¶ 5, Exh. E (Video Recording of Incident, May 26, 2018 (COR 00124 (erroneously marked COT 00124). |
| 1. Ibarra's Use Of Force<br>29. Once Ibarra lost control of Allen's arm, he wrapped his arms around Allen's body to prevent being punched or kicked. | Ibarra Decl. at ¶¶ 26-27, Exhs. F-3 and F-4; Watts Decl. at ¶ 5, Exh. E (Video Recording of Incident, May 26, 2018 (COR 00124 (erroneously marked COT 00124). |
| 30. Ibarra's head was pinned against Allen's chest and Ibarra tried to pull Allen to the ground. | Ibarra Decl. at ¶ 27, Exh. F-4; Watts Decl. at ¶ 5, Exh. E (Video Recording of Incident, May 26, 2018 (COR 00124 (erroneously marked COT 00124). |
| 31. Allen grabbed Ibarra's head. | Ibarra Decl. at ¶ 27, Exh. F-4; Hinson Decl. at ¶ 19, Exh. G-5; Watts Decl. at ¶ 5, Exh. E (Video |

MANNING&KASS<br>ELLROD, RAMIREZ, TRESTER LLP<br>Attorneys at Law

Case No. 5:19-CV-00153-RGK-SHK
**DEFENDANTS' STATEMENT OF UNCONTROVERTED FACTS**

| Defendants' Uncontroverted Facts As to All Federal and State Claims | Defendants' Supporting Evidence |
|---|---|
| | Recording of Incident, May 26, 2018 (COR 00124 (erroneously marked COT 00124). |
| 32. Ibarra tried to maintain his arms around Allen's body in attempts to control Allen, who was continuously moving. | Ibarra Decl. at ¶¶ 27-28; Watts Decl. at ¶ 5, Exh. E (Video Recording of Incident, May 26, 2018 (COR 00124 (erroneously marked COT 00124). |
| 33. When Ibarra was able to get his head from under Allen's arm, he position himself behind Allen and again wrapped his arms around Allen's body to try to pull Allen down. | Ibarra Decl. at ¶¶ 27-28; Watts Decl. at ¶ 5, Exh. E (Video Recording of Incident, May 26, 2018 (COR 00124 (erroneously marked COT 00124). |
| 34. Once Allen was on the ground, Ibarra got on top of Allen's back and tried to reach for Allen's arms to secure them. Allen continued to resist Ibarra's efforts to restrain him by tucking his arms underneath his body and pushing his body off the ground. | Ibarra Decl. at ¶¶ 31-34; Watts Decl. at ¶ 5, Exh. E (Video Recording of Incident, May 26, 2018 (COR 00124 (erroneously marked COT 00124). |
| 35. Ibarra was unable to secure Allen's arms. | Ibarra Decl. at ¶ 32; Watts Decl. at ¶ 5, Exh. E (Video Recording of |

MANNING&KASS
ELLROD, RAMIREZ, TRESTER LLP
Attorneys at Law

Case No. 5:19-CV-00153-RGK-SHK
**DEFENDANTS' STATEMENT OF UNCONTROVERTED FACTS**

| Defendants' Uncontroverted Facts As to All Federal and State Claims | Defendants' Supporting Evidence |
|---|---|
| | Incident, May 26, 2018 (COR 00124 (erroneously marked COT 00124). |
| 2. Hinson's Use Of Force<br>36. When Allen pulled his arm free from Hinson's hold, Hinson put his hand over Allen's eyes, in an attempt to distract Allen and gain compliance. Allen continued to fight Hinson. | Hinson Decl. at ¶ 19, Exh. G-5; Watts Decl. at ¶ 5, Exh. E (Video Recording of Incident, May 26, 2018 (COR 00124 (erroneously marked COT 00124). |
| 37. When Allen grabbed Ibarra's head, it appeared to Hinson that Allen was trying to force Ibarra to the floor. Hinson perceived that Allen had just assaulted Ibarra. | Hinson Decl. ¶ 19; Watts Decl. at ¶ 5, Exh. E (Video Recording of Incident, May 26, 2018 (COR 00124 (erroneously marked COT 00124). |
| 38. Hinson attempted to turn Allen towards him to prevent Allen from forcing Ibarra to the floor. | Hinson Decl. at ¶ 20; Watts Decl. at ¶ 5, Exh. E (Video Recording of Incident, May 26, 2018 (COR 00124 (erroneously marked COT 00124). |
| 39. Allen reached for Hinson's arm and was pushing Hinson off. Hinson believed Allen | Hinson Decl. at ¶ 21, Exh. G-6; Watts Decl. at ¶ 5, Exh. E (Video |

Case No. 5:19-CV-00153-RGK-SHK

**DEFENDANTS' STATEMENT OF UNCONTROVERTED FACTS**

MANNING & KASS
ELLROD, RAMIREZ, TRESTER LLP
Attorneys at Law

| Defendants' Uncontroverted Facts As to All Federal and State Claims | Defendants' Supporting Evidence |
|---|---|
| was trying to assault him. | Recording of Incident, May 26, 2018 (COR 00124 (erroneously marked COT 00124). |
| 40. Hinson grabbed Allen's arm and tried to pull Allen to the ground, but Hinson was unable to as Allen continuously pulled away from Hinson. | Hinson Decl. at ¶¶ 21-22, Exh. G-6; Watts Decl. at ¶ 5, Exh. E (Video Recording of Incident, May 26, 2018 (COR 00124 (erroneously marked COT 00124). |
| 41. Allen was moving his arms in such a way that made Hinson believe Allen was going to strike him and Ibarra. Hinson punched Allen approximately seven times in the face with his right hand. | Hinson Decl. at ¶¶ 21-24, 28, Exh. G-6; Watts Decl. at ¶ 5, Exh. E (Video Recording of Incident, May 26, 2018 (COR 00124 (erroneously marked COT 00124). |
| 42. After Allen was taken to the ground, Hinson instructed Allen to stop moving and to place his hands behind his back. Allen refused by keeping his arms tucked underneath his body. Allen tried to push himself off the ground and Hinson punched Allen five more times to the left side of his face. | Hinson Decl. at ¶¶ 25-28; Watts Decl. at ¶ 5, Exh. E (Video Recording of Incident, May 26, 2018 (COR 00124 (erroneously marked COT 00124). |

Case No. 5:19-CV-00153-RGK-SHK

**DEFENDANTS' STATEMENT OF UNCONTROVERTED FACTS**

MANNING&KASS
ELLROD, RAMIREZ, TRESTER LLP
Attorneys at Law

| Defendants' Uncontroverted Facts As to All Federal and State Claims | Defendants' Supporting Evidence |
|---|---|
| 43. Hinson perceived his punches were effective in getting Allen to stop pushing his body up and Hinson was able to reach under Allen's body and grab Allen's right arm to put it behind his back. | Hinson Decl. at ¶¶ 27-28; Watts Decl. at ¶ 5, Exh. E (Video Recording of Incident, May 26, 2018 (COR 00124 (erroneously marked COT 00124). |
| 3. Levesque's Use Of Force<br>44. When Levesque looked around the corner into the Housing Unit 17 hallway, he saw Ibarra and Hinson fighting with an inmate (Allen). Allen appeared to be on top of Ibarra. | Levesque Decl. at ¶¶ 3-4; Watts Decl. at ¶ 5, Exh. E (Video Recording of Incident, May 26, 2018 (COR 00124 (erroneously marked COT 00124). |
| 45. Levesque ran down the Housing Unit 17 hallway and grabbed Allen's right arm. Levesque tried to get Allen to the ground but he was unable to restrain Allen. | Levesque Decl. at ¶ 5; Watts Decl. at ¶ 5, Exh. E (Video Recording of Incident, May 26, 2018 (COR 00124 (erroneously marked COT 00124). |
| 46. Once Allen was on the floor, Levesque feared Allen may have a weapon as Allen had his arms tucked under his torso and did not comply with orders to place his hands behind his back. Levesque punched Allen approximately five times in the right hip in attempt to gain compliance. | Levesque Decl. at ¶ 6; Watts Decl. at ¶ 5, Exh. E (Video Recording of Incident, May 26, 2018 (COR 00124 (erroneously marked COT 00124). |

Case No. 5:19-CV-00153-RGK-SHK

**DEFENDANTS' STATEMENT OF UNCONTROVERTED FACTS**

MANNING & KASS
ELLROD, RAMIREZ, TRESTER LLP
Attorneys at Law

| Defendants' Uncontroverted Facts As to All Federal and State Claims | Defendants' Supporting Evidence |
|---|---|
| 47. When Ibarra rolled onto Allen's back, blocking Allen's hip, Levesque moved down to control Allen's feet and grabbed Allen's ankles. | Levesque Decl. at ¶ 7; Watts Decl. at ¶ 5, Exh. E (Video Recording of Incident, May 26, 2018 (COR 00124 (erroneously marked COT 00124). |
| 48. Allen began to kick his feet towards Levesque. To make Allen stop kicking, Levesque punched Allen's calf approximately five times. | Levesque Decl. at ¶ 7, Exh. H-1; Watts Decl. at ¶ 5, Exh. E (Video Recording of Incident, May 26, 2018 (COR 00124 (erroneously marked COT 00124). |
| 49. When Levesque looked up from Allen's feet, Ibarra was still on Allen's back struggling to gain control of Allen who was still moving his body. Allen and Ibarra rolled onto their right sides. Levesque saw Hinson struggling to move Allen's arm behind Allen's back, and Levesque punched Allen approximately seven to ten times in the abdomen to gain compliance. | Levesque Decl. at ¶ 9; Watts Decl. at ¶ 5, Exh. E (Video Recording of Incident, May 26, 2018 (COR 00124 (erroneously marked COT 00124). |
| 50. Allen continued to resist the deputy's efforts to place his arms behind his back, and Levesque punched Allen an additional five to ten times in the abdomen. | Levesque Decl. at ¶¶ 9-10; Watts Decl. at ¶ 5, Exh. E (Video Recording of Incident, May 26, 2018 (COR 00124 (erroneously |

**DEFENDANTS' STATEMENT OF UNCONTROVERTED FACTS**

| Defendants' Uncontroverted Facts As to All Federal and State Claims | Defendants' Supporting Evidence |
|---|---|
| | marked COT 00124). |
| 51. Levesque did not apply any force after Allen was secured in handcuffs. | Levesque Decl. at ¶ 12; Watts Decl. at ¶ 5, Exh. E (Video Recording of Incident, May 26, 2018 (COR 00124 (erroneously marked COT 00124). |
| 4. Bilton's Use Of Force<br>52. When Bilton saw Ibarra and Hinson struggling to control an inmate (Allen), Bilton perceived Allen to be big and strong as Allen had two deputies in a position of disadvantage. Allen had his hands on top of Ibarra's head and pulling downward while Hinson was trying to pull Allen away from Ibarra. | Bilton Decl. at ¶¶ 3-6; 10; Watts Decl. at ¶ 5, Exh. E (Video Recording of Incident, May 26, 2018 (COR 00124 (erroneously marked COT 00124). |
| 53. Bilton responded by grabbing Allen's right wrist and arm, and attempted to pull Allen to the floor. | Bilton Decl. at ¶ 7; Watts Decl. at ¶ 5, Exh. E (Video Recording of Incident, May 26, 2018 (COR 00124 (erroneously marked COT 00124). |
| 54. After Allen was taken to the floor, Bilton | Bilton Decl. at ¶¶ 9-10; Watts |

| Defendants' Uncontroverted Facts As to All Federal and State Claims | Defendants' Supporting Evidence |
|---|---|
| gave Allen commands to place his hands behind his back. Allen did not place his hands behind his back. Allen continued to move and push his body off the ground. After several seconds, Bilton was able to pin Allen's right arm to the floor but had difficulty maintaining control of Allen's arm as Allen was fighting to get away. | Decl. at ¶ 5, Exh. E (Video Recording of Incident, May 26, 2018 (COR 00124 (erroneously marked COT 00124). |
| 5. Miranda's Use Of Force<br>55. When Miranda responded to the Housing Unit 17 hallway, she saw an inmate (Allen) had his hands on Ibarra's head and neck while Hinson was pulling Allen away from Ibarra. | Miranda Decl. at ¶¶ 3-4; Watts Decl. at ¶ 5, Exh. E (Video Recording of Incident, May 26, 2018 (COR 00124 (erroneously marked COT 00124). |
| 56. Miranda heard Allen yelling profanities, such as "Fuck you", at Hinson and Ibarra as Allen fought them. | Miranda Decl. at ¶ 4. |
| 57. Miranda grabbed Allen's left shoulder and wrist and attempted to pull Allen to the ground. | Miranda Decl. at ¶ 5; Watts Decl. at ¶ 5, Exh. E (Video Recording of Incident, May 26, 2018 (COR 00124 (erroneously marked COT 00124). |

| Defendants' Uncontroverted Facts As to All Federal and State Claims | Defendants' Supporting Evidence |
|---|---|
| 58. After Allen was taken to the ground, Miranda placed her body weight on Allen's left arm. Allen continued to resist Miranda's efforts to restrain him by moving and pushing his body off the ground. Miranda pressed one foot against the wall to brace herself and to try to maintain control of Allen's arm. Miranda eventually placed Allen in handcuffs. | Miranda Decl. at ¶¶6-10; Watts Decl. at ¶ 5, Exh. E (Video Recording of Incident, May 26, 2018 (COR 00124 (erroneously marked COT 00124). |
| 6. Pearson's Use Of Force<br>59. Pearson responded to the Housing Unit 17 hallway after a radio call was broadcasted requesting additional deputies regarding a staff involved use of force. When he arrived at the scene, Pearson saw several deputies attempting to control an inmate (Allen). Pearson assisted Miranda with gaining control of Allen's left arm and placing Allen's hand into the handcuff. | Declaration of Andrew Pearson ("Pearson Decl.") at ¶¶ 3-7; Watts Decl. at ¶ 5, Exh. E (Video Recording of Incident, May 26, 2018 (COR 00124 (erroneously marked COT 00124). |
| 7. Rodriguez's Use Of Force<br>60. Rodriguez did not participate in restraining Allen during the incident in the Housing Unit 17 hallway. | Declaration of Joseph Rodriguez ("Rodriguez Decl.") at ¶¶ 3-6; Watts Decl. at ¶ 5, Exh. E (Video Recording of Incident, May 26, |

MANNING&KASS
ELLROD, RAMIREZ, TRESTER LLP
Attorneys at Law

Case No. 5:19-CV-00153-RGK-SHK
**DEFENDANTS' STATEMENT OF UNCONTROVERTED FACTS**

| Defendants' Uncontroverted Facts As to All Federal and State Claims | Defendants' Supporting Evidence |
|---|---|
| | 2018 (COR 00124 (erroneously marked COT 00124). |
| **D. Once Handcuffed, Allen Taken To The Medical Office**<br><br>61. After Allen was secured in handcuffs, no force was applied. He was immediately escorted to the Intake Medical Office. | Ibarra Decl. at ¶ 37; Hinson Decl. at ¶ 28; Levesque Decl. at ¶ 12; Miranda Decl. at ¶ 11; Watts Decl. at ¶ 9, Exhibit I (Video 3 – Holding Cell (Bates No. COR 00127), Intake Interior Slider video at Timestamp 12:51:46.708 ). |
| 62. While at the Medical Office, Nurse Charlin Garcia attempted to examine Allen, who had bruising and bleeding in his facial area. Nurse Garcia, along with another nurse, cleaned Allen's face and eyes and checked Allen's range of motion, which was determined to be good. | Watts Decl. at ¶ 9, Exhibit I (Video 3 – Holding Cell (Bates No. COR 00127), Intake Interior Slider video at Timestamp 12:51:46.708 – 12:56.29.030 PM); Declaration of Charlin Garcia ("Garcia Decl.") at ¶¶ 5-6. |
| 63. While in the Medical Office, Allen was uncooperative and refusing care. He would not sit up to have his vitals taken and would not answer questions. | Rodriguez Decl. at ¶¶ 6-7. Watts Decl. at ¶ 9, Exhibit I (Video 3 – Holding Cell, Intake Interior Slider video at Timestamp 12:51:46.708 – 12:56.29.030 PM); Garcia Decl. ¶¶ 8-9. |

MANNING & KASS
ELLROD, RAMIREZ, TRESTER LLP
Attorneys at Law

| Defendants' Uncontroverted Facts As to All Federal and State Claims | Defendants' Supporting Evidence |
|---|---|
| 64. Due to Allen's behavior, he was placed in an Emergency Restraint Chair and placed in a sobering cell. Approximately, thirty minutes after Allen was placed in the ERC and placed in the sobering cell, he was reevaluated. | Rodriguez Decl. at ¶ 8, Exh. B.; Watts Decl. at ¶ 9, Exhibit I (Video 3 – Holding Cell, Intake Interior Slider video at Timestamp 12:56:39.291 – 12:58:11.986); Watts Decl. at ¶ 9, Exhibit I (Video 3 – Holding Cell, Sobering Cell 1 video at Timestamp 12:59:37.715 and 1:29:11.529 PM.); Garcia Decl. ¶11, 12. |
| 65. While in the sobering cell, periodic safety checks were conducted on Allen. He was later taken to the hospital for further examination. | Rodriguez Decl. at ¶¶ 8, 10, Exh. B; Garcia Decl. ¶ 13. |
| 66. Allen sustained bruises and swelling. There is no evidence Allen sustained any serious physical injuries. | Watts Decl. at ¶¶ 2, Exh. A, Complaint at ¶ 36; Garcia Decl. ¶¶5-6. |
| **E. Allen Did Not File Grievances Against Miranda, Levesque, Bilton, Pearson and Rodriguez** <br> 67. RCSD has a grievance procedure. Allen did not file a grievance against Miranda, Levesque, Bilton, Pearson and Rodriguez | Declaration of Melissa Nieburger ("Nieburger Decl.") at ¶¶2, 4-6, Exhs. C and D. |

| Defendants' Uncontroverted Facts As to All Federal and State Claims | Defendants' Supporting Evidence |
|---|---|
| concerning the May 26, 2018 incident. | |

## CONCLUSIONS OF LAW

1.      As to federal claim one under 42 U.S.C. § 1983 for excessive force against the individual defendants, the use of force by the deputies were objectively reasonable under the totality of the circumstances and was applied in a good faith effort to maintain or restore discipline and order of a prisoner, not maliciously or sadistically to cause harm. *Graham v. Connor*, 490 U.S. 386 (1989); *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992); *Kingsley v. Hendrickson,* 576 U.S. ___, 135 S. Ct. 2466, 2473 (2015).

Even assuming, arguendo, that plaintiff could show a constitutional violation, the defendants are entitled to qualified immunity. *Saucier v. Katz*, 533 U.S. 194, 200 (2001); *White v. Pauly*, 137 S.Ct. 548, 552 (2017); *S.B. v. County of San Diego*, 2017 U.S. App. LEXIS 8452 at *15 (9th Cir. 2017).

Additionally, plaintiff's claim against defendants Miranda, Levesque, Bilton, Pearson and Rodriguez fail because plaintiff failed to exhaust his administrative remedies against the aforementioned individual defendants as required by 42 U.S.C. § 1997e.

2.      The second and third federal *Monell* claims under 42 U.S.C. § 1983 against the County fail as no underlying constitutional violation can be shown. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *Martinez v. County of Los Angeles*, 47 Cal.App.4th 334, 349-350 (1996). Assuming arguendo that one can be shown, there is no additional evidence of a pattern, practice or custom. *Oklahoma v. Tuttle*, 471 U.S. 808, 824 (1985).

3.      Plaintiff's redundant state law claims four, five, six and seven, for

MANNING&KASS
ELLROD, RAMIREZ, TRESTER LLP
Attorneys at Law

1  negligence, battery, intentional infliction of emotional distress, and violation of Cal.

2  Code § 52.1 – Bane Act, lack merit for the same reasons as the federal claims.

3  *Martinez v. County of Los Angeles,* 47 Cal.App.4th 334, 349-350 (1996). All

4  individual defendants acted under law and within constitutional limits. The County

5  is immune from the state law claims. Gov. Code § 815.2.

6  Further, as to plaintiff's Bane Act claim, there is no evidence of threats,

7  intimidation or coercion by defendants.

8  4.  The prayer for punitive damages lack merit because there is no

9  evidence that any of the defendants acted with malice, oppression, fraud, or reckless

10  disregard towards plaintiff. Where there is no evidence that a § 1983 defendant has

11  acted with evil intent, there is no legal right to punitive damages. *Ward v. City of*

12  *San Jose*, 967 F.2d 280, 286 (9th Cir. 1991). There is no evidence that the individual

13  defendants acted with evil intent.

14  DATED:  December 16, 2019        **MANNING & KASS**

15            **ELLROD, RAMIREZ, TRESTER LLP**

18      By: _____

19          Eugene P. Ramirez
20          Angela M. Powell
            Michael R. Watts
21          Attorneys for Defendants, COUNTY OF
            RIVERSIDE, RIVERSIDE COUNTY
22          SHERIFF'S DEPARTMENT, CORPORAL
            LUIS IBARRA, DEPUTY NIGEL
23          HINSON, DEPUTY MATT BILTON,
            DEPUTY ANTHONY LEVESQUE,
24          DEPUTY LORENA MIRANDA,
            DEPUTY ANDREW PEARSON,
25          DEPUTY JOSEPH RODRIGUEZ