Eugene P. Ramirez, Esq. (State Bar No. 134865)
 epr@manningllp.com
Angela M. Powell, Esq. (State Bar No. 191876)
 amp@manningllp.com
Michael R. Watts, Esq. (State Bar No. 312210)
 mrw@manningllp.com
**MANNING & KASS**
**ELLROD, RAMIREZ, TRESTER LLP**
801 S. Figueroa St, 15th Floor
Los Angeles, California 90017-3012
Telephone: (213) 624-6900
Facsimile: (213) 624-6999

Attorneys for Defendants, COUNTY OF RIVERSIDE, RIVERSIDE COUNTY SHERIFF'S DEPARTMENT, CORPORAL LUIS IBARRA, DEPUTY NIGEL HINSON, DEPUTY MATT BILTON, DEPUTY ANTHONY LEVESQUE, DEPUTY LORENA MIRANDA, DEPUTY ANDREW PEARSON, DEPUTY JOSEPH RODRIGUEZ

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| JARRELL RAYVON ALLEN, an individual,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF RIVERSIDE, a California municipal entity; RIVERSIDE COUNTY SHERIFF'S DEPARTMENT, a California municipal entity; CORPORAL LUIS IBARRA, an individual; DEPUTY NIGEL HINSON, an individual; DEPUTY MATT BILTON, an individual; DEPUTY ANTHONY LEVESQUE, an individual; DEPUTY SHERIFF LORENA MIRANDA, an individual; DEPUTY ANDREW PEARSON, an individual; DEPUTY JOSEPH RODRIGUEZ, an individual; and DOES 1-30, inclusive,<br><br>Defendants. | Case No. 5:19-CV-00153-RGK-SHK<br>*[The Hon. R. Gary Klausner, Magistrate, Shashi H. Kewalramani]*<br><br>**DECLARATION OF CORRECTIONAL DEPUTY NIGEL HINSON IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, SUMMARY ADJUDICATION**<br><br>Date: January 13. 2020<br>Time: 9:00 am<br>Ctrm.: 850 |

I, NIGEL HINSON, state and declare as follows:

1. I am a Correctional Deputy with the Riverside County Sheriff's Department ("RCSD") and I have been employed with RCSD since January 2015. I have been named as a defendant to this action. If called and sworn as a witness to testify, I am competent to testify and would testify from my own personal knowledge as to the facts set forth in this declaration, except as to those matters that are stated on information and belief.

2. This declaration is made in support of Defendants' Motion for Summary Judgment, which I am informed and believe is being filed separately on my behalf with the Court.

3. On May 26, 2018, I was working as a Correctional Deputy at the Larry D. Smith Correctional Facility, and was assigned to Housing Unit 17.

4. At about 12:40 p.m. on May 26, 2018, after the inmates in Housing Unit 17 finished eating their meals, they were instructed to return to their cells.

5. It is common practice in Housing Unit 17 that three inmates from each dayroom – one from each race – are allowed to remain in the dayroom to clean. Cleaning the dayroom is a privilege for the inmates because they are allowed to remain outside of their cells longer and have access to phones and the television.

6. On the day of the incident, plaintiff Jarrell Allen was one of the inmates who remained in the dayroom to clean.

7. Allen and the two other inmates were told to return to their cells. The two other inmates complied, but Allen refused. Allen approached the housing unit speaker and wanted an explanation as to why he had to return to his cell.

8. Sr. Corporal Ibarra told Allen that he was not allowed to clean due to his previous behavior in the dayroom. Allen did not agree with Sr. Corporal Ibarra's decision. Allen told Sr. Corporal Ibarra that Sr. Corporal Ibarra needed to give him a better reason.

9. Sr. Corporal Ibarra instructed Allen to step out of the dayroom and

walk out into the Housing Unit 17 hallway.

10. For safety concerns, it is common practice that when handling inmates, two deputies are present. I stepped out of the Housing Unit 17 control booth pod with Sr. Corporal Ibarra and walked into the left sally port slider entrance.

11. When Allen stepped out of the dayroom, he appeared annoyed and was walking with his arms out to the side of his body. It is routine procedure that inmates place their hands behind their backs when they step out of the dayroom. It is construed as an act of open defiance when inmates step out of the dayroom with their hands at their sides.

12. Sr. Corporal Ibarra instructed Allen to place his hands behind his back. As if pretending he did not hear Sr. Corporal Ibarra's instructions, Allen started looking around into the dayrooms with other inmates, and continued to walk towards Sr. Corporal Ibarra with his hands still out to his sides.

13. Sr. Corporal Ibarra again instructed Allen to place his hands behind his back. Allen shook his head and slowly placed his hands behind his back. Sr. Corporal Ibarra told Allen to walk to the redline area in the Housing Unit 17 hallway.

14. The redline is a physical red line painted on the floor and it is an area designated for inmates to stand and where staff can talk to the inmates. It is a sign of compliance when inmates stand in the redline area.

15. While walking to the redline, Allen stopped and asked where he was going. Sr. Corporal Ibarra told Allen to keep walking towards the wall and stand with his back against the wall. Allen did not comply and remained still. I placed my left hand on Allen's back to help guide him towards the wall. Allen started resisting by tensing his body and turned aggressively towards me. I perceived that Allen was going to assault Sr. Corporal Ibarra or myself. Attached as Exhibit "G-1" is a true and correct Still Photo re Allen resisting by tensing his body and turning towards me.

16. I grabbed Allen by his right hand and placed it behind his back. Sr. Corporal Ibarra was on Allen's left side. Together, Sr. Corporal Ibarra and I pushed Allen against the wall to gain control of him and to place Allen in handcuffs. Allen tensed his arm and tried to pull away from my grip. Attached as Exhibit "G-2" is a true and correct Still Photo re Allen pulling his arm away from me.

17. I told Allen not to tense his body and stop trying to pull away. Allen pushed himself off of the wall and was able to step away from the wall. Attached as Exhibit "G-3" is a true and correct Still Photo re Allen stepping away from the wall.

18. As Sr. Corporal Ibarra and I struggled with Allen, we walked backwards towards the opposite side of the hallway. I tried to maintain my hold on Allen's arm but he continued to pull away. Allen was able to get his arm free from my hold. Attached as Exhibit "G-4" is a true and correct Still Photo re Allen with his right arm free and looking at Sr. Corporal Ibarra.

19. I put my hand over Allen's eyes to distract him and gain compliance. Allen continued to fight and grabbed Sr. Corporal Ibarra's head. It appeared that Allen was trying to force Sr. Corporal Ibarra to the floor. At this time, I perceived that Allen had just assaulted Sr. Corporal Ibarra and posed an immediate threat to the safety of Sr. Corporal Ibarra and myself. Attached as Exhibit "G-5" is a true and correct Still Photo re my hand over Allen's eyes and Allen grabbing my hand.

20. I attempted to turn Allen towards me to prevent him from forcing Sr. Corporal Ibarra to the floor.

21. Allen reached for my arm and started to push me off. I believed Allen was trying to assault me. Attached as Exhibit "G-6" is a true and correct Still Photo re Allen reaching for my arm.

22. Allen continued to push me off as I tried to gain control of him. I grabbed Allen's arm and tried to pull him to the ground. Based on my training and experience, for the safety of staff and other inmates, when there is an assaultive inmate, the goal is to get the inmate to the ground.

23. Allen, however, continued to physically fight my and Sr. Corporal Ibarra's efforts to gain control of him. Allen was continuously pulling away from me and moving his arms as if he was going to strike Sr. Corporal Ibarra and myself. I punched Allen approximately seven times in his face with my right hand.

24. During the incident, Allen was aggressive and was actively fighting Sr. Corporal Ibarra and me. We had to forcibly pull Allen to the floor.

25. Once on the floor, Allen was on his stomach and continued to be noncompliant. He had his hands tucked underneath his body, which posed a safety issue because I did not know whether Allen had a weapon.

26. Sr. Corporal Ibarra got on top of Allen's back trying to get Allen's arms from underneath him. Allen continued to physically resist by pushing off the ground and trying to roll over to his back to have a better advantage in the fight. I instructed Allen to stop moving and to place his hands behind his back, but Allen refused.

27. Allen continued to push off the ground, so I punched Allen five more times with my right hand to the left side of his face. My punches were effective in getting Allen to stop pushing off the ground. I reached under Allen's body and grabbed his right arm. I tried to pull Allen's right arm out from under his body to put it behind his back. Deputy Miranda was controlling Allen's left arm and placed it behind his back and placed him in handcuffs.

28. Allen was very strong and it was difficult for five staff members to control him. Once Allen was handcuffed, I did not, nor did I witness any deputies involved in the incident, use any force.

29. After Allen was handcuffed, I told him to stand up while I attempted to assist him to his feet. Allen was still aggressive and refused to comply with my orders.

30. Correctional Deputy Levesque and I grabbed Allen's arms and rolled him into a seated position. CD Levesque and I pulled Allen to his feet by his arms and escorted him to the Intake Medical Office.

31. I recall Allen was able to walk on his own while being escorted to Intake.

32. I did not see any visible injuries on Allen, and Allen did not complain about any pain while being escorted to Intake.

33. Upon arriving in Intake, I escorted Allen to the Intake Medical office and placed him into a chair by the door. Once Allen was in the medical office, I left the area and had no further contact with Allen.

I declare under penalty of perjury under the laws of the State of California and of the United States of America that the foregoing is true and correct.

Executed on December 16, 2019, at Riverside, California.

_____
CORRECTIONAL DEPUTY NIGEL HINSON