1  Eugene P. Ramirez, Esq. (State Bar No. 134865)
      epr@manningllp.com
2  Angela M. Powell, Esq. (State Bar No. 191876)
      amp@manningllp.com
3  Michael R. Watts, Esq. (State Bar No. 312210)
      mrw@manningllp.com
4  **MANNING & KASS**
   **ELLROD, RAMIREZ, TRESTER LLP**
5  801 S. Figueroa St, 15th Floor
   Los Angeles, California 90017-3012
6  Telephone: (213) 624-6900
   Facsimile: (213) 624-6999
7
   Attorneys for Defendants, COUNTY OF
8  RIVERSIDE, RIVERSIDE COUNTY SHERIFF'S
   DEPARTMENT, CORPORAL LUIS IBARRA,
9  DEPUTY NIGEL HINSON, DEPUTY MATT
   BILTON, DEPUTY ANTHONY LEVESQUE,
10 DEPUTY LORENA MIRANDA, DEPUTY
   ANDREW PEARSON, DEPUTY JOSEPH
11 RODRIGUEZ

12              **UNITED STATES DISTRICT COURT**

13       **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

14

15 JARRELL RAYVON ALLEN, an         Case No. 5:19-CV-00153-RGK-SHK
   individual,                      [The Hon. R. Gary Klausner,
16                                  Magistrate, Shashi H. Kewalramani]
              Plaintiff,
17                                  **NOTICE OF MOTION AND**
        v.                          **DEFENDANTS' MOTION FOR**
18                                  **SUMMARY JUDGMENT, OR IN**
   COUNTY OF RIVERSIDE, a           **THE ALTERNATIVE, SUMMARY**
19 California municipal entity;     **ADJUDICATION**
   RIVERSIDE COUNTY SHERIFF'S
20 DEPARTMENT, a California         Date:      January 13, 2020
   municipal entity; CORPORAL LUIS  Time:      9:00 a.m.
21 IBARRA, an individual; DEPUTY    Ctrm.:     850
   NIGEL HINSON, an individual;
22 DEPUTY MATT BILTON, an
   individual; DEPUTY ANTHONY
23 LEVESQUE, an individual; DEPUTY
   SHERIFF LORENA MIRANDA, an
24 individual; DEPUTY ANDREW
   PEARSON, an individual; DEPUTY
25 JOSEPH RODRIGUEZ, an individual;
   and DOES 1-30, inclusive,
26
              Defendants.
27

28

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on January 13, 2020 at 9:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 850 of the above-captioned court, located at 255 East Temple Street, Los Angeles, California 90012, Defendants COUNTY OF RIVERSIDE, RIVERSIDE COUNTY SHERIFF'S DEPARTMENT ("RCSD") (collectively "County"), CORPORAL LUIS IBARRA, DEPUTY NIGEL HINSON, DEPUTY MATT BILTON, DEPUTY ANTHONY LEVESQUE, DEPUTY LORENA MIRANDA, DEPUTY ANDREW PEARSON, and DEPUTY JOSEPH RODRIGUEZ, will move for summary judgment or, in the alternative, for summary adjudication of issues on the First Amended Complaint on the grounds set forth below.

**OPERATIVE CLAIMS:**

The operative complaint is the First Amended Complaint. (Doc. 28) The operative claims are: the first federal claim under 42 U.S.C. § 1983 for excessive force against Defendants Ibarra, Hinson, Bilton, Levesque, Miranda, Pearson and Rodriguez (collectively "individual defendants"); the second federal *Monell* claim – excessive force – under for 42 U.S.C. § 1983 against the County of Riverside and Riverside County Sheriff's Department (collectively "County defendants"); the third federal *Monell* claim – failure to train, supervise, and discipline – under 42 U.S.C. § 1983 against County defendants; the fourth cause of action for negligence against all defendants; the fifth cause of action for battery against all defendants; the sixth cause of action for intentional infliction of emotional distress against all defendants; and the seventh cause of action for violation of Cal. Civ. Code § 52.1 – Bane Act against all defendants.

Defendants move for summary judgment and/or summary adjudication of all claims.

1.     As to federal claim one under 42 U.S.C. § 1983 for excessive force against the individual defendants, the use of force by the deputies were objectively reasonable under the totality of the circumstances and was applied in a good faith effort to

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

MANNING&KASS
ELLROD, RAMIREZ, TRESTER LLP

1   maintain or restore discipline and order of a prisoner, not maliciously or sadistically to
2   cause harm. *Graham v. Connor*, 490 U.S. 386 [109 S.Ct. 1865, 104 L.Ed.2d 443]
3   (1989); *Hudson v. McMillian*, 503 U.S. 1, 6-7 [112 S.Ct. 995, 117 L.Ed.2d 156] (1992);
4   *Kingsley v. Hendrickson,* 576 U.S. ___, 135 S. Ct. 2466, 2473 (2015).

5        Even assuming, arguendo, that plaintiff could show a constitutional violation, the
6   defendants are entitled to qualified immunity. *Saucier v. Katz*, 533 U.S. 194, 200
7   (2001); *White v. Pauly*, 137 S.Ct. 548, 552 (2017); *S.B. v. County of San Diego*, 2017
8   U.S. App. LEXIS 8452 at *15 (9th Cir. 2017).

9        Additionally, plaintiff's claim against defendants Miranda, Levesque, Bilton,
10  Pearson and Rodriguez fail because plaintiff failed to exhaust his administrative
11  remedies against the aforementioned individual defendants as required by 42 U.S.C. §
12  1997e.

13       2.     The second and third federal *Monell* claims under 42 U.S.C. § 1983
14  against the County fail as no underlying constitutional violation can be shown. *City of*
15  *Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *Martinez v. County of Los Angeles*, 47
16  Cal.App.4th 334, 349-350 (1996). Assuming arguendo that one can be shown, there is
17  no additional evidence of a pattern, practice or custom. *Oklahoma v. Tuttle*, 471 U.S.
18  808, 824 (1985).

19       3.     Plaintiff's redundant state law claims four, five, six and seven, for
20  negligence, battery, intentional infliction of emotional distress, and violation of Cal.
21  Code § 52.1 – Bane Act, lack merit for the same reasons as the federal claims. *Martinez*
22  *v. County of Los Angeles,* 47 Cal.App.4th 334, 349-350 (1996). All individual
23  defendants acted under law and within constitutional limits. The County is immune
24  from the state law claims. Gov. Code § 815.2.

25       Further, as to plaintiff's Bane Act claim, there is no evidence of threats,
26  intimidation or coercion by defendants.

27       4.     The prayer for punitive damages lack merit because there is no evidence
28  that any of the defendants acted with malice, oppression, fraud, or reckless disregard

MANNING & KASS
ELLROD, RAMIREZ, TRESTER LLP

towards plaintiff. Where there is no evidence that a § 1983 defendant has acted with evil intent, there is no legal right to punitive damages. *Ward v. City of San Jose*, 967 F.2d 280, 286 (9th Cir. 1991). There is no evidence that the individual defendants acted with evil intent.

This motion is based on the attached memorandum of points and authorities, the Separate Statement of Uncontroverted Facts, the Declarations of Attorney Michael Watts; Sr. Corporal Ibarra; Correctional Deputy Nigel Hinson; Correctional Deputy Matt Bilton; Correctional Deputy Anthony Levesque; Officer Lorena Miranda; Correctional Deputy Andrew Pearson; Correctional Deputy Joseph Rodriguez; Nurse Charlin Garcia; and Inv. Melissa Nieburger, the Request for Judicial notice and any attached exhibits, all the pleadings, records, and files in this action, and upon such further oral and documentary evidence as may be presented at the hearing of this motion.

## NOTICE ON CONFERENCE OF COUNSEL PER LOCAL RULE

This motion is being made following the conference of counsel pursuant to L.R. 7-3. On December 9, 2019, defense counsel sent plaintiff's counsel a detailed letter stating the grounds for summary judgment. The parties engaged in a telephonic conference to discuss the issues to be raised in the Motion for Summary Judgment. The parties were unable to resolve the issues which necessitated the filing of this motion. [Watts Decl. at ¶ 12, Exh. L.]

1 | DATED:  December 16, 2019

**MANNING & KASS
ELLROD, RAMIREZ, TRESTER LLP**

By: _____
Eugene P. Ramirez
Angela M. Powell
Michael R. Watts
Attorneys for Defendants, COUNTY OF
RIVERSIDE, RIVERSIDE COUNTY
SHERIFF'S DEPARTMENT, CORPORAL
LUIS IBARRA, DEPUTY NIGEL
HINSON, DEPUTY MATT BILTON,
DEPUTY ANTHONY LEVESQUE,
DEPUTY LORENA MIRANDA,
DEPUTY ANDREW PEARSON,
DEPUTY JOSEPH RODRIGUEZ

# **TABLE OF CONTENTS**

**Page**

1.  INTRODUCTION ...................................................................................................1

2.  STATEMENT OF UNCONTROVERTED FACTS ............................................2

    A.  Allen's Refusal To Return To Cell .............................................................2

    B.  Allen's Physical Resistance To Efforts To Restrain Him ..........................3

    C.  Deputies' Use Of Force To Stop The Threat Posed By Allen ...................4

        1.  Ibarra's Use Of Force ......................................................................4

        2.  Hinson's Use Of Force .....................................................................5

        3.  Levesque's Use Of Force .................................................................6

        4.  Bilton's Use Of Force ......................................................................6

        5.  Miranda's Use Of Force ...................................................................7

        6.  Pearson's Use Of Force ....................................................................7

        7.  Rodriguez's Use Of Force ...............................................................7

    D.  Once Handcuffed, Allen Taken To The Medical Office ...........................7

    E.  Allen Did Not File Grievances Against Miranda, Levesque, Bilton, Pearson and Rodriguez ..............................................................................8

3.  SUMMARY JUDGMENT STANDARD .........................................................8

4.  THE DEFENDANT DEPUTIES APPLIED FORCE IN A GOOD FAITH EFFORT TO MAINTAIN AND RESTORE DISCIPLINE AND ORDER.....................................................................................................9

    A.  The Need For Application Of Force .........................................................10

    B.  The Relationship Between The Need And Amount Of Force Used..........................................................................................................10

    C.  The Threat Reasonably Perceived By The Responsible Officials ..........11

    D.  Any Efforts To Temper The Severity Of A Forceful Response............11

    E.  The Extent Of Injury Suffered By Allen .................................................12

    F.  Plaintiff's Use Of Force Was Objectively Reasonable ...........................13

    G.  Plaintiff Failed To Exhaust Administrative Remedies ...........................14

    H.  Plaintiff's Allegations Of Denial Of Medical Care ................................15

MANNING&KASS
ELLROD, RAMIREZ, TRESTER LLP

5.   THE DEPUTIES ARE ENTITLED TO QUALIFIED IMMUNITY .............. 15

6.   THE *MONELL* CLAIMS LACK MERIT AS A MATTER OF LAW ........... 16

7.   PLAINTIFF'S STATE LAW CLAIMS LACK MERIT ...................... 18

    A.   Negligence And Battery ........................................ 18

    B.   Intentional Infliction Of Emotional Distress .......................... 19

    C.   Cal. Civ. Code § 52.1 – Bane Act ................................. 19

8.   EVIDENCE DOES NOT SUPPORT PLAINTIFF'S CLAIM FOR PUNITIVE DAMAGES ........................................ 20

9.   CONCLUSION ................................................. 20

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Ackley v. Carroll*, 2011 U.S. Dist. LEXIS 58323, *22 (E.D. Cal., June 1, 2011 ......11

*Anderson v. Creighton*, 483 U.S. 635, 640 (1987) .......................................................16

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ..........................................8

*Ashcroft v. al-Kidd,* 563 U.S. 731, 742 (2011) .....................................................15,16

*Atkinson v. Cty of Tulare*, 790 F. Supp. 2d 1188, 1211 (E.D. 2011)..........................18

*Boyd v. Cty. of Riverside*, 2016 U.S. Dist. LEXIS 1580683, *22 (C.D. Cal.
    Sep. 7, 2016) ......................................................................................9,12,13,16

*Brosseau v. Haugen,* 543 U.S. 194, 198 (2004) .........................................................16

*Carter v. City of Carlsbad*, 799 F. Supp. 2d 1147, 1164 (S.D. Cal. 2011) ...............18

*Carter v. District of Columbia*, 795 F.2d 116, 123-124 (D.C. Cir. 1986) .................18

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323. (1986).....................................................8

*City of Canton v. Harris*, 489 U.S. 378, 388-389 [109 S.Ct. 1197, 103
    L.Ed.2d 412] (1989)......................................................................................17

*City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) ........................................3,16

*Connick v. Thompson*, 563 U.S. 51, 60 [131 S.Ct. 1350, 179 L.Ed.2d 417]
    (2011)........................................................................................................17

*Dang v. Cross*, 422 F.3d 800, 810 (9th Cir. 2005); 9th Cir. Model Jury Instr.
    5.5 (2007). ..................................................................................................20

*Davidson v. City of Westminster*, 32 Cal.3d 197 (1982) ............................................19

*Estelle v. Gamble*, 429 U.S. 97, 104 .........................................................................15

*Franklin v. Fox*, 312 F.3d 423, 437 ..........................................................................15

*Gibson v. Cty. of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002)..................................9

*Graham v. Connor*, 490 U.S. 386 (1989).....................................................1,3,9,10,14

*Grant v. Palomares*, 2014 U.S. Dist. LEXIS 16748, *36-37 .....................................12

*Hamilton v. Rogers*, 791 F.2d 439, 443 (5th Cir. 1986) ............................................18

*Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) ......................................................15

*Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992) ...............................................1,3,9,10,16

MANNING&KASS
ELLROD, RAMIREZ, TRESTER LLP

*Johnson v. Glick*, 481 F.2d 1028, 1033 (9th Cir. 1973) ............................................. 13

*Jones v. Bock*, 549 U.S. 199, 211 ............................................................................. 14

*Kingsley v. Hendrickson,* 576 U.S. ___, 135 S. Ct. 2466, 2473 (2015) ......... 1,3,10,14

*Kramer v. Gutierrez*, 2019 U.S. Dist. LEXIS 124557, *4, fn. 1 (N.D. Cal. Jul. 25, 2019) ....................................................................................................................... 9

*Martinez v. County of Los Angeles*, 47 Cal.App.4th 334, 349-350 (1996) ................. 3

*Menjivar v. City of Los Angeles,* 2007 WL 4662062, *12 (C.D. Cal. 2007) ............. 19

*Mullenix v. Luna*, 136 S.Ct. 305, 309 (2015) ........................................................... 15

*Munoz v. City of Union City,* 120 Cal.App.4th 1077, 1112-1113 (2004) ................... 19

*Oklahoma v. Tuttle*, 471 U.S. 808, 824 (1985) ....................................................... 3,17

*Pearson v. Callahan*, 555 U.S. 223, 231 (2009) ....................................................... 15

*Porter v. Nussle*, 534 U.S. 516, 532 ......................................................................... 14

*Rodriguez v. Avita*, 871 F.2d 552, 555 (5th Cir. 1989) ............................................ 17

*Saucier v. Katz*, 533 U.S. 194, 200 (2001) .................................................................. 3

*S.B. v. County of San Diego*, 2017 U.S. App. LEXIS 8452 at *15 (9th Cir. 2017) ..................................................................................................................... 3,16

*Sloman v. Tadlock*, 21 F.3d 1462 (9th Cir. 1994) ................................................... 18

*Tekle v. United States*, 511 F.3d 839, 855 (9th Cir. 2007) ....................................... 19

*Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) ................................................ 17

*Turner v. Safley*, 482 U.S. 78, 84-85 (1987) ........................................................... 10

*Ward v. City of San Jose*, 967 F.2d 280, 286 (9th Cir. 1991) ..................................... 4

*White v. Pauly*, 137 S.Ct. 548, 552 (2017) ............................................................ 3,16

*Whitley v. Albers,* 475 U.S. 312, 327 (1986) ........................................................... 10

*Young v. City of Visalia*, 687 F.Supp.2d 1141, 1148 (2009) ................................. 17,18

MANNING&KASS
ELLROD, RAMIREZ, TRESTER LLP

## STATUTES

42 U.S.C. § 1983.............................................................................2,3,14,16

42 U.S.C. § 1997e...................................................................................3

42 U.S.C. § 1997e(a).............................................................................14

Cal. Civ. Code § 52.1.......................................................................2,3,19

Cal. Civ. Code § 52.1(a).........................................................................19

Gov. Code § 815.2..................................................................................3

Fed. R. Civ. P. 56(c)...............................................................................8

MANNING&KASS
ELLROD, RAMIREZ, TRESTER LLP

### MEMORANDUM OF POINTS AND AUTHORITIES

### 1.   INTRODUCTION

This case arises from an incident that occurred on May 26, 2018, while plaintiff was in custody at the Larry D. Smith Correctional Facility. Plaintiff claims that defendants used excessive force against him and denied him medical care. All of plaintiff's claims lack merit as the uncontroverted evidence shows that plaintiff was an assaultive prisoner who engaged in active physical resistance to defendants' efforts to restrain him and that the force used against him was objectively reasonable, and applied in a good faith effort to maintain and restore discipline and order. *Graham v. Connor*, 490 U.S. 386 (1989); *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992); *Kingsley v. Hendrickson,* 576 U.S. ___, 135 S. Ct. 2466, 2473 (2015).

On May 26, 2018, plaintiff was housed in Housing Unit 17, a state housing unit for level 4 and 5 inmates. After lunch, the inmates in Housing Unit 17 were told to return to their cells. Plaintiff did not return to his cell and remained in the dayroom to clean. When defendant Ibarra told plaintiff he did not have cleaning privileges because of his involvement in a prior disturbance, plaintiff responded with profanities and told Ibarra to give him a better reason.

In the prior disturbance, plaintiff encouraged the entire Housing Unit 17, with over 190 inmates, to refuse to return to their cells. To avoid a similar disturbance on the date of the incident, Ibarra had plaintiff step out of the dayroom, so Ibarra could speak to plaintiff without the view of the other inmates. After plaintiff stepped out of the dayroom, he refused to follow routine procedures of placing his hands behind his back and walking to the red line to be searched prior to speaking to staff. When defendants Ibarra and Hinson attempted to place plaintiff against the wall, plaintiff physically resisted by pushing his body away from the wall and pulling his arms away from Ibarra and Hinson.

The uncontroverted evidence demonstrates that the force applied by defendants was not excessive, but necessary to maintain and restore discipline and order during a

MANNING&KASS
ELLROD, RAMIREZ, TRESTER LLP

rapidly-evolving incident. Plaintiff physically fought the efforts of Ibarra and Hinson to restrain him. Defendants Miranda, Bilton and Levesque responded to the scene and observed plaintiff assaulting Ibarra and fighting with Hinson. It took the efforts of the five deputies to finally take plaintiff to the ground. While on the ground, plaintiff continued to physically resist the defendants' efforts to secure him in handcuffs. The evidence does not show that defendants acted maliciously and sadistically for the purpose of causing harm to plaintiff.

After plaintiff was placed in handcuffs, he was escorted to the Medical Office to be evaluated. There is no evidence that plaintiff suffered serious physical injuries. Plaintiff fails to show how any of the actions taken were unlawful or unconstitutional. Summary judgment for all defendants on all claims is not only appropriate, but required by law.

## 2.  **STATEMENT OF UNCONTROVERTED FACTS**

### A.  **Allen's Refusal To Return To Cell**

On May 26, 2018, Plaintiff Jarrell Allen ("Allen") was in custody at Larry D. Smith Correctional Facility as a convicted offender, after a jury found him guilty of felony offenses on January 2, 2018. [UF[1] 1] Plaintiff was housed in Dayroom D of Housing Unit 17, which is a state level housing unit for level four and five inmates, which are inmates who have a prior criminal history and have served four to six cumulative years in State or County custody. [UF 2]

At about 12:40 p.m., the inmates in Housing Unit 17 finished eating their meals and were instructed to return to their cells. Allen refused to return to his cell and remained in the dayroom to clean. [UF 3] It is common practice in Housing Unit 17 that three inmates from each dayroom are allowed to remain in the dayroom to clean, but such practice is a privilege, which Allen was not allowed due to his involvement in a prior disturbance. [UF 4]

[1] "UF" refers to Uncontroverted Fact.

MANNING&KASS
ELLROD, RAMIREZ, TRESTER LLP

1   Prior to May 26, 2018, Allen was involved in a prior incident, where he was the
2   main instigator of a dayroom disturbance. During the prior incident, Allen encouraged
3   the entire Housing Unit 17, which houses over 190 inmates, to refuse to return to their
4   cells. [UF 5]

5   Due to Allen's involvement in the prior disturbance, Defendant Sr. Corporal
6   Ibarra ("Ibarra") told Allen he could not remain in the dayroom to clean and that he
7   would need to return to his cell. [UF 6] Ibarra also ordered two other inmates to return
8   to their cells. The other two inmates complied, while Allen approached the housing unit
9   speaker and started using profanities, telling Ibarra he needed to give a better reason.
10  [UF 7]

11  To avoid a disturbance like the previous one, Ibarra had Allen step out of the
12  dayroom so he could speak to Allen away from the view of the other inmates. Based on
13  Ibarra's experience, inmates tend to accept constructive criticism, more so, if they do
14  not have peer pressure from other inmates watching or listening. [UF 8]

15  **B.    Allen's Physical Resistance To Efforts To Restrain Him**

16  As it is common practice to have two staff present while handling an inmate,
17  Ibarra and defendant Correctional Deputy Hinson ("Hinson") stepped out of the control
18  room and walked towards the sally port slider entrance to meet Allen. [UF 9] Allen
19  exited the dayroom and walked towards Ibarra and Hinson with his arms out to his
20  sides. [UF 10] It is routine procedure that when inmates step out of the dayroom, the
21  inmates place their hands behind their backs. It is construed as an act of open defiance
22  when inmates step out of the dayroom with their arms out to their sides. [UF 11]

23  For safety issues, Ibarra instructed Allen to place his hands behind his back. [UF
24  12] Allen did not comply and Ibarra again instructed Allen to place his hands behind
25  his back. [UF 13] After Allen hesitantly placed his hands behind his back, Ibarra
26  instructed Allen to walk towards the red line. The red line is a physical red line painted
27  on the floor and an area designated for inmates to stand and where staff can talk to the
28  inmates. It is routine procedure that when inmates step out of the dayroom and into the

MANNING&KASS
ELLROD, RAMIREZ, TRESTER LLP

1   hallway, the inmates stand in the red line area to be searched. [UF 14]

2       Allen started walking, but stopped and asked where he was going. Ibarra, again,

3   told Allen to keep walking to the red line. [UF 15] Allen remained still and did not

4   move. Hinson placed his hand on Allen's back to help guide Allen towards the wall and

5   conduct a pat search for contraband. [UF 16] Allen tensed his body and turned towards

6   Hinson in a manner that caused Ibarra and Hinson to believe Allen was going to assault

7   them. [UF 17]

8       **C.**    **Deputies' Use Of Force To Stop The Threat Posed By Allen**

9       Ibarra ordered Allen to stop resisting and face the wall. [UF 18] Allen refused by

10   trying to pull away from Hinson. [UF 19] To gain control of Allen's movements, Ibarra

11   and Hinson attempted to push Allen against the wall. [UF 20] Allen pushed his body

12   back and away from the wall. [UF 21] Allen pulled his arm from Ibarra's and Hinson's

13   hold. [UF 22] Ibarra and Hinson struggled to gain control of Allen as Allen moved

14   away from the wall with his arms free from Ibarra's and Hinson's hold. [UF 23]

15       Defendants Deputy Lorena Miranda ("Miranda"), Correctional Deputy Anthony

16   Levesque ("Levesque") and Correctional Deputy Matt Bilton ("Bilton") were in the

17   Housing Unit 16 hallway when they heard a noise from the Housing Unit 17 hallway.

18   When they responded to the Housing Unit 17 hallway, Miranda, Levesque and Bilton

19   observed Allen with his hands on Ibarra while Hinson was trying to pull Allen away

20   from Ibarra. [UF 24] Miranda, Levesque and Bilton responded and assisted Ibarra and

21   Hinson in pulling Allen to the ground. [UF 25]

22       While on the ground, Allen was face down and had his arms tucked underneath

23   his body. [UF 26] Allen's arms under his body was a safety risk as he could have had a

24   weapon. [UF 27] Allen continued to move his body and push his body off the ground in

25   an attempt to stand up while the five deputies – Ibarra, Hinson, Miranda, Levesque and

26   Bilton – tried to secure Allen in handcuffs. [UF 28]

27       **1.**    **Ibarra's Use Of Force**

28       Once Ibarra initially lost control of Allen's arm, he wrapped his arms around

MANNING&KASS
ELLROD, RAMIREZ, TRESTER LLP

1  Allen's body to prevent being punched or kicked. [UF 29] Ibarra's head was pinned
2  against Allen's chest and Ibarra tried to pull Allen to the ground. [UF 30] Allen grabbed
3  Ibarra's head. [UF 31] Ibarra tried to maintain his arms around Allen's body in attempts
4  to control Allen, who was continuously moving. [UF 32] When Ibarra was able to get
5  his head from under Allen's arm, he positioned himself behind Allen and again wrapped
6  his arms around Allen's body to try to pull Allen down. [UF 33]

7       Once Allen was on the ground, Ibarra got on top of Allen's back and tried to
8  reach for Allen's arms to secure them. Allen continued to resist Ibarra's efforts to
9  restrain him by tucking his arms underneath his body and pushing his body off the
10 ground. [UF 34] Ibarra was unable to secure Allen's arms. [UF 35]

       **2.**    **Hinson's Use Of Force**

11
12      When Allen pulled his arm free from Hinson's hold, Hinson put his hand over
13 Allen's eyes, in an attempt to distract Allen and gain compliance. Allen continued to
14 fight Hinson. [UF 36] When Allen grabbed Ibarra's head, it appeared to Hinson that
15 Allen was trying to force Ibarra to the floor. Hinson perceived that Allen had just
16 assaulted Ibarra. [UF 37] Hinson attempted to turn Allen towards him to prevent Allen
17 from forcing Ibarra to the floor. [UF 38] Allen reached for Hinson's arm and was
18 pushing Hinson off. Hinson believed Allen was trying to assault him. [UF 39] Hinson
19 grabbed Allen's arm and tried to pull Allen to the ground, but Hinson was unable to as
20 Allen continuously pulled away from Hinson. [UF 40] Allen was moving his arms in
21 such a way that made Hinson believe Allen was going to strike him and Ibarra. Hinson
22 punched Allen approximately seven times in the face with his right hand. [UF 41]

23      After Allen was taken to the ground, Hinson instructed Allen to stop moving and
24 to place his hands behind his back. Allen refused by keeping his arms tucked
25 underneath his body. Allen tried to push himself off the ground and Hinson punched
26 Allen five more times to the left side of his face. [UF 42] Hinson perceived his punches
27 were effective in getting Allen to stop pushing his body up and Hinson was able to
28 reach under Allen's body and grab Allen's right arm to put it behind his back. [UF 43]

MANNING & KASS
ELLROD, RAMIREZ, TRESTER LLP

### 3.   Levesque's Use Of Force

When Levesque looked around the corner into the Housing Unit 17 hallway, he saw Ibarra and Hinson fighting with an inmate (Allen). Allen appeared to be on top of Ibarra. [UF 44] Levesque ran down the Housing Unit 17 hallway and grabbed Allen's right arm. Levesque tried to get Allen to the ground but he was unable to restrain Allen. [UF 45]

Once Allen was on the floor, Levesque feared Allen may have a weapon as Allen had his arms tucked under his torso and did not comply with orders to place his hands behind his back. Levesque punched Allen approximately five times in the right hip in an attempt to gain compliance. [UF 46]

When Ibarra rolled onto Allen's back, blocking Allen's hip, Levesque moved down to control Allen's feet and grabbed Allen's ankles. [UF 47] Allen began to kick his feet towards Levesque. To make Allen stop kicking, Levesque punched Allen's calf approximately five times. [UF 48]

When Levesque looked up from Allen's feet, Ibarra was still on Allen's back struggling to gain control of Allen who was still moving his body. Allen and Ibarra rolled onto their right sides. Levesque saw Hinson struggling to move Allen's arm behind Allen's back, and Levesque punched Allen approximately seven to ten times in the abdomen to gain compliance. [UF 49] Allen continued to resist the deputy's efforts to place his arms behind his back, and Levesque punched Allen an additional five to ten times in the abdomen. [UF 50] Levesque did not apply any force after Allen was secured in handcuffs. [UF 51]

### 4.   Bilton's Use Of Force

When Bilton saw Ibarra and Hinson struggling to control an inmate (Allen), Bilton perceived Allen to be big and strong as Allen had two deputies in a position of disadvantage. Allen had his hands on top of Ibarra's head and was pulling downward while Hinson was trying to pull Allen away from Ibarra. [UF 52]

Bilton responded by grabbing Allen's right wrist and arm, and attempted to pull

Allen to the floor. [UF 53] After Allen was taken to the floor, Bilton gave Allen commands to place his hands behind his back. Allen did not place his hands behind his back. Allen continued to move and push his body off the ground. After several seconds, Bilton was able to pin Allen's right arm to the floor but had difficulty maintaining control of Allen's arm as Allen was fighting to get away. [UF 54]

### 5.   Miranda's Use Of Force

When Miranda responded to the Housing Unit 17 hallway, she saw an inmate (Allen) had his hands on Ibarra's head and neck while Hinson was pulling Allen away from Ibarra. [UF 55] Miranda heard Allen yelling profanities, such as "Fuck you", at Hinson and Ibarra as Allen fought them. [UF 56]

Miranda grabbed Allen's left shoulder and wrist and attempted to pull Allen to the ground. [UF 57] After Allen was taken to the ground, Miranda placed her body weight on Allen's left arm. Allen continued to resist Miranda's efforts to restrain him by moving and pushing his body off the ground. Miranda pressed one foot against the wall to brace herself and to try to maintain control of Allen's arm. Miranda eventually placed Allen in handcuffs. [UF 58]

### 6.   Pearson's Use Of Force

Pearson responded to the Housing Unit 17 hallway after a radio call was broadcasted requesting additional deputies regarding a staff involved use of force. When he arrived at the scene, Pearson saw several deputies attempting to control an inmate (Allen). Pearson assisted Miranda with gaining control of Allen's left arm and placing Allen's hand into the handcuff. [UF 59]

### 7.   Rodriguez's Use Of Force

Rodriguez did not participate in restraining Allen during the incident in the Housing Unit 17 hallway. [UF 60]

### D.   Once Handcuffed, Allen Taken To The Medical Office

After Allen was secured in handcuffs, no force was applied. He was immediately escorted to the Intake Medical Office. [UF 61] While at the Medical Office, Nurse

MANNING & KASS
ELLROD, RAMIREZ, TRESTER LLP

1   Charlin Garcia attempted to examine Allen, who had bruising and bleeding in his facial
2   area. Nurse Garcia, along with another nurse, cleaned Allen's face and eyes and
3   checked Allen's range of motion, which was determined to be good. [UF 62] While in
4   the Medical Office, Allen was uncooperative and refused care. He would not sit up to
5   have his vitals taken and would not answer questions. [UF 63]

6        Due to Allen's behavior, he was placed in an Emergency Restraint Chair and
7   placed in a sobering cell. Approximately, thirty minutes after Allen was placed in the
8   ERC and placed in the sobering cell, he was reevaluated. [UF 64]

9        While in the sobering cell, periodic safety checks were conducted on Allen. He
10  was later taken to the hospital for further examination. [UF 65] Allen sustained bruises
11  and swelling. There is no evidence Allen sustained any serious physical injuries. [UF
12  66]

13   **E.   Allen Did Not File Grievances Against Miranda, Levesque, Bilton,**
14        **Pearson and Rodriguez**

15        RCSD has a grievance procedure. Allen did not file a grievance against Miranda,
16  Levesque, Bilton, Pearson and Rodriguez concerning the May 26, 2018 incident. [UF
17  67]

18   **3.   SUMMARY JUDGMENT STANDARD**

19        Summary judgment is appropriate if the "pleadings, depositions, answers to
20  interrogatories, and admissions on file, together with the affidavits, if any, show that
21  there is no genuine issue as to any material fact and that the moving party is entitled to
22  judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material when it affects
23  the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
24  The moving party bears the initial burden of demonstrating the absence of any genuine
25  issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323. (1986). Once the
26  moving party has satisfied this burden, the nonmoving party cannot rest on the mere
27  allegations or denials of his pleading, but must "go beyond the pleadings and by her
28  own affidavits, or by the 'depositions, answers to interrogatories, and admissions on

MANNING&KASS
ELLROD, RAMIREZ, TRESTER LLP

1    file' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324.

2    If the non-moving party fails to make a sufficient showing of an element of its case, the

3    moving party is entitled to judgment as a matter of law. *Id.* at 325.

4    **4.**     **THE DEFENDANT DEPUTIES APPLIED FORCE IN A GOOD FAITH**

5          **EFFORT TO MAINTAIN AND RESTORE DISCIPLINE AND ORDER**

6       The Court's excessive force analysis begins with identification of the specific

7    constitutional right allegedly infringed by the use of force. *Graham*, 490 U.S. at 393.

8    Plaintiff's status determines the standard by which his excessive force claim is

9    evaluated. *Id.*; *Kramer v. Gutierrez*, 2019 U.S. Dist. LEXIS 124557, *4, fn. 1 (N.D.

10   Cal. Jul. 25, 2019). Although Plaintiff alleges defendants violated his Fourth and

11   Fourteenth Amendment rights when they used excessive force against him, plaintiff's

12   claim does not rest on the Fourth and Fourteenth Amendments because plaintiff was a

13   convicted prisoner at the time of the incident. Plaintiff's claim rests on the Eighth

14   Amendment. *See Gibson v. Cty. of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002) (court

15   confirms Eighth Amendment applies after plaintiff has been convicted of a crime);

16   *Hudson*, 503 U.S. at 6-7; *Boyd v. Cty. of Riverside*, 2016 U.S. Dist. LEXIS 1580683,

17   *22 (C.D. Cal. Sep. 7, 2016); *Graham,* 490 U.S. at 395, n. 10 (excessive force against

18   an arrestee while detained in custody post-arrest but pre-arraignment is analyzed under

19   the Fourth Amendment while post-arraignment pretrial detainees are protected by the

20   Due Process Clause of the Fourteenth Amendment).)

21       For an excessive force claim brought by a prisoner under the Eighth Amendment,

22   the core judicial inquiry is "whether force was applied in a good-faith effort to maintain

23   or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S.

24   at 6-7. In conducting this inquiry, a court may evaluate the following factors: (1) the

25   need for application of force, (2) the relationship between that need and the amount of

26   force used, (3) the threat reasonably perceived by the responsible officials, (4) any

27   efforts made to temper the severity of a forceful response, and (5) the extent of injury

28   suffered by an inmate. *Id.*

MANNING&KASS
ELLROD, RAMIREZ, TRESTER LLP

A.   **The Need For Application Of Force**

The Supreme Court has recognized that "'running a prison is an inordinately difficult undertaking.'" *Kingsley,* 135 S. Ct. at 2474, quoting *Turner v. Safley*, 482 U.S. 78, 84-85 (1987). "Officers facing disturbances 'are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving.'" *Id.*, quoting *Graham,* 490 U.S. at 397. Here, the uncontroverted facts demonstrate that Allen was a non-compliant, high level inmate who aggressively and violently resisted the defendants' efforts to restrain him. Allen appeared intent on assaulting Ibarra and Hinson when he pulled his arms free from their hold, grabbed Ibarra's head while pushing Hinson who was trying to prevent plaintiff from harming Ibarra. Allen appeared intent in fighting and hurting the deputies as he resisted the efforts of five deputies to take him down.

B.   **The Relationship Between The Need And Amount Of Force Used**

In *Hudson*, the Supreme Court explained that "not … every malevolent touch by a prison guard gives rise to a federal cause of action" and that the "Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind'." *Hudson,* 503 U.S. at 9-10, quoting *Whitley v. Albers,* 475 U.S. 312, 327 (1986).

Here, no force was applied against Allen until he engaged in active physical resistance to the deputies' efforts to restrain him. No strikes or punches were delivered against Allen until after he had assaulted Ibarra and Hinson, and appeared intent on continuing to harm Ibarra, Hinson and other deputies. [UF 18-23] The uncontroverted facts show that despite Allen's physical resistance to Ibarra and Hinson's attempts to restrain him, by first turning aggressively towards Hinson and attempting to pull his arm away from Hinson after he was told to walk to the wall, by pushing his body and moving away from the wall, by continuously pulling his arms away from Ibarra's and Hinson's hold, Ibarra and Hinson did not strike or punch Allen. *Id.* They merely pushed

Case No. 5:19-CV-00153-RGK-SHK
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

MANNING&KASS
ELLROD, RAMIREZ, TRESTER LLP

1   Allen against the wall to gain control of Allen. *See Ackley v. Carroll*, 2011 U.S. Dist.

2   LEXIS 58323, \*22 (E.D. Cal., June 1, 2011 (pushing inmate against a wall and kicking

3   his leg during pat-down search was a *de minimis* use of force that was not "repugnant to

4   the conscience of mankind" and was not actionable under the Eighth Amendment).

5       The punches later delivered by Hinson came after Allen grabbed Ibarra's head

6   and Allen was moving his arms in such a way that Hinson perceived Allen was going to

7   strike him and Ibarra. [UF 37-41] They were not applied with a malicious and sadistic

8   intent to injure. While Allen was on the ground, he continued to actively resist the

9   deputies' efforts to restrain him. [UF 26-28] Allen tucked his arms underneath his body

10  and refused to comply with commands and efforts to pull his arm out to secure him in

11  handcuffs. Fearful that Allen may have had a weapon, Hinson and Levesque delivered

12  punches against Allen to gain compliance. [UF 46]

13      **C.**    **The Threat Reasonably Perceived By The Responsible Officials**

14      As stated above, Allen was non-compliant and aggressively engaged in active

15  physical resistance to efforts to restrain him. Allen physically fought Ibarra and Hinson

16  before they were able to conduct their pat search for weapons. Allen was able to gain

17  physical advantage over Ibarra and Hinson when he was able to move away from the

18  wall and pull his arms free from their hold.

19      When Miranda, Levesque and Bilton responded to the scene, they saw Allen with

20  his hands on Ibarra, as if pulling Ibarra down, and Hinson struggling with Allen. The

21  defendants reasonably perceived that Allen was a threat to their safety and the safety of

22  other staff and inmates.

23      **D.**    **Any Efforts To Temper The Severity Of A Forceful Response**

24      As stated above, Ibarra and Hinson attempted to push Allen against the wall to

25  gain control of him. When Ibarra lost control of Allen's arm, he wrapped his arms

26  around Allen's body to try to pull him down. When Hinson lost control of Allen's arm,

27  he put his hand over Allen's eyes to distract Allen and gain control. Allen pushed

28  Hinson away and Hinson tried to grab Allen and pull him down.

MANNING&KASS
ELLROD, RAMIREZ, TRESTER LLP

1    Ibarra, Hinson, Miranda, Bilton, and Levesque used their body weight to push
2    Allen to the ground to restrain him.

3    **E.    The Extent Of Injury Suffered By Allen**

4    Allen sustained bruises and swelling to his eyes. There is no evidence Allen
5    suffered any serious physical injuries from the May 26, 2018 incident.

6    The uncontroverted facts show force was necessary to maintain or restore order,
7    and was not applied maliciously and sadistically to cause harm. Courts have found that
8    "[d]eference is to be given to the quick decisions officers must make when responding
9    to a confrontation with 'riotous inmates.' [Citation.]" *Grant v. Palomares*, 2014 U.S.
10   Dist. LEXIS 16748, *36-37. In *Grant*, the district court found there was no Eighth
11   Amendment violation as to plaintiff's allegation of excessive force when defendant
12   body slammed plaintiff to the pavement as undisputed facts showed "defendant was
13   acting to prevent an escalation" and "[the] record demonstrates that there was a
14   reasonably perceived threat plaintiff might incite other inmates to act out, and the
15   undisputed facts reflect that plaintiff escalated the incident from verbally expressing his
16   displeasure to arguing with defendant, and continuing to refuse to comply with
17   defendant's orders."

18   Similarly, Ibarra reasonably perceived Allen might incite other inmates to act
19   out, so he had Allen step out of the dayroom where he could speak to Allen out of the
20   view of other inmates. Allen escalated the incident from refusing to comply with
21   routine procedures of placing his hands behind his back and walking to the red line
22   when ordered and then physically resisting efforts to restrain him to assaulting Ibarra
23   and attempting to assault Hinson. "The court must be deferential when force is
24   legitimately used to maintain or restore security and order." *Grant, supra*, at *49. "[A]n
25   inmate refusing to comply with orders presents a threat to the safety of other inmates
26   and prison security." *Boyd v. Cty. of Riverside, supra*, at *41.

27   In *Boyd, supra*, the facts are similar to the present case, where plaintiff was
28   combative and continued to resist and physically assault the officers. The court found

MANNING & KASS
ELLROD, RAMIREZ, TRESTER LLP

1    that

2         "the circumstances surrounding the subsequent application of force

3         applied while attempting to restrain and handcuff plaintiff, - i.e., four or

4         five punches, kneeing 'more than a few times,' grabbing, and pulling and

5         knocking to the floor – do not give rise to an inference that [the officer]

6         applied force maliciously and sadistically for the very purpose of causing

7         harm. When the officers swarmed on plaintiff, plaintiff began yelling,

8         pushing, and 'fight[ing]' the officers off of him. Plaintiff's decision to

9         resist the officers' efforts to restrain him and to actively assault the

10        officers, created the need for the application of additional force to subdue

11        plaintiff. The officers reasonably perceived plaintiff as posing a threat

12        not only because he had obscured himself and refused to respond to

13        verbal commands, but also because of his assaultive response. Plaintiff

14        continued to resist and physically assault the officers while they

15        attempted to restrain and handcuff him, and physically resisted and

16        refused to stand up even after he was handcuffed. ... On these facts, the

17        force that [the officer] applied was neither unreasonable nor indicative of

18        a malicious and sadistic intent to solely cause harm to plaintiff."

19   *Id.* at 43-44.

20        Similarly, Allen's decision to resist the defendants' efforts to restrain him, by

21   physically fighting Ibarra and Hinson, by tucking his arms underneath his body while

22   on the ground and attempting to stand up after he was taken to the ground, created the

23   need for the application of additional force to subdue him. None of the force applied

24   was unreasonable nor indicative of a malicious and sadistic intent solely to cause harm

25   to Allen. The defendants did not violate Allen's Eighth Amendment right to be free

26   from cruel and unusual punishment.

27   **F.    Plaintiff's Use Of Force Was Objectively Reasonable**

28        Even if the Court analyzes Allen's claim under the Fourteenth Amendment as

MANNING&KASS
ELLROD, RAMIREZ, TRESTER LLP

1    alleged by Allen, there is still no constitutional violation. As stated in *Boyd,*
2    "[r]egardless of which standard applies, it is clear that '[n]ot every push or shove, even
3    if it may later seem unnecessary in the peace of a judge's chambers' violates the
4    Constitution's proscriptions on excessive force." *Boyd,* at \*29, quoting *Johnson v.*
5    *Glick,* 481 F.2d 1028, 1033 (9th Cir. 1973), overruled in part on other grounds by
6    *Graham,* 490 U.S. at 397.

7    　　　Notably, the factors that courts consider in analyzing the reasonableness of the
8    force used under the Fourteenth Amendment is similar as to the factors set forth for
9    Eighth Amendment claims: (1) the relationship between the need for the use of force
10   and the amount of force used; (2) the extent of the plaintiff's injury; (3) any effort made
11   by the officer to temper or limit the amount of force; (4) the severity of the security
12   problem at issue; (5) the threat reasonably perceived by the officer; and (6) whether the
13   plaintiff was actively resisting. *See Kingsley v. Hendrickson,* 576 U.S. ___, 135 S. Ct.
14   2466, 2473 (2015) (Fourteenth Amendment excessive force claim requires the court to
15   consider whether "the force purposely or knowingly used was objectively
16   unreasonable"), citing *Graham,* 490 U.S. at 396.

17   　　　Here, the uncontroverted facts demonstrate that Allen was actively resisting and
18   posed a severe security issue. Defendants used objectively reasonable force under the
19   totality of the circumstances.

20   　　　**G.**　　**Plaintiff Failed To Exhaust Administrative Remedies**

21   　　　Plaintiff failed to exhaust his administrative remedies under the Prison Litigation
22   Reform Act as to Miranda, Levesque, Bilton, Rodriguez and Pearson. The PLRA
23   requires exhaustion of administrative remedies for all "action[s] … brought with respect
24   to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner
25   confined in any jail, prison, or other correctional facility. …" 42 U.S.C. § 1997e(a).
26   "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life,
27   whether they involve general circumstances or particular episodes, and whether they
28   allege excessive force or some other wrong." *Porter v. Nussle,* 534 U.S. 516, 532. The

MANNING&KASS
ELLROD, RAMIREZ, TRESTER LLP

1   PLRA's exhaustion requirement is mandatory. *Jones v. Bock*, 549 U.S. 199, 211. Here,

2   the RCSD has a grievance procedure. Plaintiff did not file grievances against Miranda,

3   Levesque, Bilton, Rodriguez and Pearson regarding the May 26, 2018 incident.

4            **H.**    **Plaintiff's Allegations Of Denial Of Medical Care**

5         Plaintiff did not bring a separate cause of action for his allegations that he was

6   denied medical care. Rather, plaintiff improperly includes the allegations in his first

7   claim for excessive force. To the extent the court considers plaintiff's allegations,

8   defendants are nonetheless entitled to judgment as a matter of law.

9         To establish a constitutional violation under the Eighth Amendment due to

10  inadequate medical care, plaintiff must show "deliberate indifference" by prison

11  officials to a "serious medical need." *Estelle v. Gamble*, 429 U.S. 97, 104. Deliberate

12  indifference to a prisoner's medical needs is defined by the Court as the "unnecessary

13  and wanton infliction of pain." *Id*. Here, the uncontroverted facts demonstrate that

14  plaintiff was taken to the Medical Office immediately after the incident. There is no

15  evidence that plaintiff suffered any serious physical injuries.

16  **5.**    **THE DEPUTIES ARE ENTITLED TO QUALIFIED IMMUNITY**

17        Assuming for the sake of argument that the court does find Allen's constitutional

18  rights were violated, all individual defendants are entitled to qualified immunity.

19  "Qualified immunity protects government officials from civil liability if 'their conduct

20  does not violate clearly established statutory or constitutional rights of which a

21  reasonable person would have known.'" *Franklin v. Fox*, 312 F.3d 423, 437, quoting

22  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Pearson v. Callahan*, 555

23  U.S. 223, 231 (2009). Qualified immunity is essentially a question of law "and is

24  appropriately made on summary judgment where the underlying facts are undisputed."

25  *Fox,* 312 F.3d at 437.

26        The law alleged to have been violated must be tailored to the specific

27  circumstances and not a high level of generality. *Ashcroft v. al-Kidd,* 563 U.S. 731, 742

28  [131 S.Ct. 2074, 179 L.Ed.2d 1149] (2011). "The general proposition, for example that

MANNING&KASS
ELLROD, RAMIREZ, TRESTER LLP

15

1  an unreasonable search or seizure violates the <u>Fourth Amendment</u> is of little help in

2  determining whether the violative nature of particular conduct is clearly established."

3  *Ashcroft* at 742. The relevant question for qualified immunity is whether existing

4  precedent established "beyond debate" that the officer's actions were unreasonable,

5  based on the specific circumstances of the alleged violation. *Mullenix v. Luna*, 136

6  S.Ct. 305, 309 (2015); *Ashcroft*, 563 U.S. at 741; *Anderson v. Creighton*, 483 U.S. 635,

7  640 (1987). "If the law at that time did not clearly establish that the officer's conduct

8  would violate the Constitution, the officer should not be subject to liability or, indeed,

9  even the burdens of litigation." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004); *see also*

10  *Fox* at 437; *Ashcroft* at 743. Therefore, it must be determined if the law was clearly

11  established. *Fox* at 437.

12      In determining whether the law was clearly established, recent case law dictates

13  that there must be case law on sufficiently similar facts to provide notice of the

14  violation being committed. *White v. Pauly*, 137 S.Ct. 548, 552 (2017); *S.B. v. Cnty. Of*

15  *San Diego*, 2017 U.S. App. LEXIS 8452 at p. *15 (9th Cir. 2017). There is no case

16  precedent which would put any defendant on notice that they were violating any law.

17  The force applied on Allen by the defendants was necessary and applied in a good-faith

18  effort to maintain and restore discipline and order. *Hudson*, 503 U.S. at 6-7; *Boyd v.*

19  *Cty. of Riverside, supra*, at *41-44. The force was also objectively reasonable. *Id.* There

20  is no indication that any defendant would have known of a constitutional violation,

21  thereby entitling them to qualified immunity.

22  **6.   THE *MONELL* CLAIMS LACK MERIT AS A MATTER OF LAW**

23      Plaintiff has alleged a *Monell* cause of action against the County under 42 U.S.C.

24  § 1983. Plaintiff has failed to show an underlying constitutional violation and therefore

25  there can be no *Monell* liability. *City of Los Angeles v. Heller*, 475 U.S. 796, 799

26  (1986).

27      Notwithstanding the lack of constitutional violation, plaintiff has also failed to

28  support his unlawful custom allegation with any evidence. Plaintiff never went beyond

MANNING & KASS
ELLROD, RAMIREZ, TRESTER LLP

1  the conclusory allegations in his First Amended Complaint. This is insufficient for

2  *Monell* liability.

3      "Plaintiffs who seek to impose liability on local governments under § 1983 must

4  prove that 'action pursuant to official municipal policy' caused their injury. Official

5  municipal policy includes the decisions of a government's lawmakers, the acts of its

6  policymaking officials, and practices so persistent and widespread as to practically have

7  the force of law." *Connick v. Thompson*, 563 U.S. 51, 60 [131 S.Ct. 1350, 179 L.Ed.2d

8  417] (2011) [internal citation omitted]. It requires a three part inquiry: 1) it must be

9  shown that there is an unconstitutional policy, 2) which can be attributed to a policy

10  maker, and 3) that policy is the cause of the harm to plaintiff. *Oklahoma City v. Tuttle,*

11  471 U.S. 808, 824 [105 S.Ct. 2427, 85 L.Ed.2d 791] (1985).

12      A public entity can be held liable under 42 U.S.C. § 1983 for a failure to train, if

13  the failure to train, or failure to provide a different kind of training, causes a

14  constitutional violation, and the failure to do so amounts to deliberate indifference to

15  the rights of individuals with whom those employees come into contact. *City of Canton*

16  *v. Harris*, 489 U.S. 378, 388-389 [109 S.Ct. 1197, 103 L.Ed.2d 412] (1989); *Young v.*

17  *City of Visalia*, 687 F.Supp.2d 1141, 1148 (2009). "'Deliberate indifference is a

18  stringent standard of fault, requiring proof that a municipal actor disregarded a known

19  or obvious consequence of his action.'" *Connick,* 563 U.S. at 61. Any lesser

20  requirement would result in *de facto respondeat superior* liability. *Id.* In order to show

21  a policy of deliberate indifference, it must be shown that there is a pattern of similar

22  constitutional violations by untrained employees. *Connick,* 563 U.S. at 62.

23      There are no official written policies alleged as unconstitutional, but rather

24  plaintiff alleges that the unconstitutional acts of defendants were violations of their own

25  policies. This concession of constitutional policies then requires plaintiff to support his

26  "custom" allegations with evidence of multiple, similar past incidents – thereby

27  demonstrating official knowledge and tacit approval of a wrongful course of conduct by

28  municipal employees. *Rodriguez v. Avita*, 871 F.2d 552, 555 (5th Cir. 1989); *Oklahoma*

1   *v. Tuttle*, 471 U.S. at 823-824. "Liability for improper custom may not be predicated on

2   isolated or sporadic incidents; it must be founded upon practices of sufficient duration,

3   frequency and consistency that the conduct has become a traditional method of carrying

4   out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) [internal citations

5   omitted]. Plaintiff's allegation of "unconstitutional" violations in the *Gray* and *Garcia*

6   case, based on the pleadings filed on those cases, is not enough.

7        The court has found as many as 12 specific instances to be insufficient to

8   establish a pattern of purposes of municipal liability. *See Hamilton v. Rogers*, 791 F.2d

9   439, 443 (5th Cir. 1986) (12 incidents of racial employment incidents in two and-a-half

10  years insufficient to show pattern for purposes of civil rights laws); *Carter v. District of*

11  *Columbia*, 795 F.2d 116, 123-124 (D.C. Cir. 1986) (11 prior incidents of use of force,

12  insufficient to show pervasive pattern of tacit approval); *Sloman v. Tadlock*, 21 F.3d

13  1462 (9th Cir. 1994) (habitual harassment of a plaintiff by one officer, insufficient to

14  demonstrate a widespread misconduct of police force as a matter of law). In the absence

15  of an overwhelming showing of numerous prior similar incidents – numerous other

16  citizens – a § 1983 plaintiff proceeding on a tacit, wrongful 'custom' theory fails to

17  make a prima facie case against a governmental entity.

18       Notwithstanding the lack of a constitutional violation, plaintiff fails to show any

19  pattern or practice of violations. *Young,* 687 F.Supp.2d at 1149-1150. Therefore,

20  plaintiff cannot establish a viable *Monell* claim against the County.

21  **7.    PLAINTIFF'S STATE LAW CLAIMS LACK MERIT**

22       **A.    Negligence And Battery**

23       A battery claim and state negligence claim based on an excessive force theory are

24  measured under the reasonableness standard of the Fourth Amendment. *See Carter v.*

25  *City of Carlsbad*, 799 F. Supp. 2d 1147, 1164 (S.D. Cal. 2011); *Atkinson v. Cty of*

26  *Tulare*, 790 F. Supp. 2d 1188, 1211 (E.D. 2011). Accordingly, plaintiff's state claims

27  fail for the same reasons that plaintiff's federal claim fails.

28       Plaintiff's allegation that defendants were negligent in failing to summon medical

Manning & Kass
Ellrod, Ramirez, Trester LLP

1   care similarly lacks merit as the uncontroverted facts show that plaintiff was escorted to
2   the Medical Office immediately after the incident.

3   Moreover, to the extent plaintiff's negligence claim against the County is based
4   on his allegations of failure to train or supervise, it is well-settled that a claim against a
5   law enforcement or prosecuting agency based on negligent failure to train or supervise
6   are "not cognizable under California law." *Menjivar v. City of Los Angeles,* 2007 WL
7   4662062, *12 (C.D. Cal. 2007) (citing *Munoz v. City of Union City,* 120 Cal.App.4[th]
8   1077, 1112-1113 (2004).

9   **B.    Intentional Infliction Of Emotional Distress**

10   To have a cause of action for intentional infliction of emotional distress, it must
11   be shown that "'(1) extreme and outrageous conduct by the defendant[s] with the
12   intention of causing, or reckless disregard of the probability of causing, emotional
13   distress; (2) the plaintiff suffering severe or extreme emotional distress; and (3) actual
14   and proximate causation of the emotional distress by the defendants['] outrageous
15   conduct.'" *Tekle v. United States*, 511 F.3d 839, 855 (9th Cir. 2007), quoting *Davidson
16   v. City of Westminster*, 32 Cal.3d 197 (1982). Outrageous conduct is conduct which is
17   so extreme that it exceeds all bounds of what is tolerated by civilized society. *Id.* There
18   is no evidence of outrageous conduct at any point in the incident.

19   **C.    Cal. Civ. Code § 52.1 – Bane Act**

20   California Civil Code section 52.1 prohibits "a person or persons, whether or not
21   acting under color of law, [from] interfer[ing] by threats, intimidation, or coercion, or
22   [from] attempt[ing] to interfere by threats, intimidation, or coercion, with the exercise
23   or enjoyment by any individual or individuals of rights secured by the Constitution or
24   laws of the United States, or of the rights secured by the Constitution or laws of this
25   state …" Cal. Civ. Code § 52.1(a). Thus, to prevail on a Bane Act claim, a plaintiff
26   must demonstrate, inter alia, "intimidation, threats, or coercion."

27   Plaintiff's Bane Act claim is based on the allegations of excessive force and
28   denial of medical care. As argued above, the uncontroverted facts demonstrate that

MANNING & KASS
ELLROD, RAMIREZ, TRESTER LLP

1  defendants' use of force was objectively reasonable under the totality of the
2  circumstances and that plaintiff was not denied necessary medical care.

3       Plaintiff's allegation that defendants interfered with his right to file grievances,
4  defend himself in a criminal prosecution and the right not to be discriminated against
5  on account of one's race all lack merit. The uncontroverted evidence shows plaintiff
6  filed grievances after the incident. Prior to the incident, plaintiff had been found guilty
7  of felony offenses by a jury. There is no evidence plaintiff was discriminated against
8  based on his race.

9  **8.     EVIDENCE DOES NOT SUPPORT PLAINTIFF'S CLAIM FOR**
10  **PUNITIVE DAMAGES**

11      Defendants are entitled to summary judgment as to plaintiff's punitive damages
12  claim because there is no evidence that the defendants acted with malice, oppression, or
13  reckless disregard toward plaintiff's rights. *Dang v. Cross*, 422 F.3d 800, 810 (9th Cir.
14  2005); 9th Cir. Model Jury Instr. 5.5 (2007). Plaintiff has disclosed no evidence that the
15  defendants acted with malice, oppression, or reckless disregard toward plaintiff. The
16  evidence is actually contrary to that assertion. Defendants applied force in good faith
17  effort to maintain and restore discipline and order. There is no evidence of evil intent.

18  **9.     CONCLUSION**

19      In light of all of the foregoing, the Court should grant summary judgment for
20  defendants on all claims.

21  DATED:  December 16, 2019     **MANNING & KASS**
22                               **ELLROD, RAMIREZ, TRESTER LLP**

23
24                               By:   *M. chael Watt*
25                                     Eugene P. Ramirez
26                                     Angela M. Powell
                                       Michael R. Watts
27                                     Attorneys for Defendants, COUNTY OF
                                       RIVERSIDE, ET AL.
28

MANNING & KASS
ELLROD, RAMIREZ, TRESTER LLP